# W. Michael BYRD

v.

# Mary Etta BYRD.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 4, 2005 Session.

July 6, 2005.

Permission to Appeal Denied by Supreme Court Feb. 21, 2006.

Rehearing Denied March 27, 2006.

Jeffrey L. Levy, Nashville, Tennessee, for the appellant, W. Michael Byrd.

Mary Etta Byrd, Washington, D.C., Pro Se.

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

## OPINION

Husband appeals the denial of his third petition to terminate or reduce his *in futuro* alimony obligations. He contends he is unable to work due to a medical disability, that Wife has experienced an increase in her earning capacity, and that she no longer has a need for alimony. He also contends that his current alimony obligation exceeds 50% of his income in violation of 15 U.S.C. § 1673. Finding the evidence preponderates in favor of a reduction of alimony, we modify the judgment and remand with instructions to reduce Husband's alimony *in futuro* obligation. We affirm the trial court in all other respects.

W. Michael Byrd, M.D., and Mary Etta Byrd (Husband and Wife, respectively) were married for nineteen years. Wife was granted a divorce in August of 1990 [1] on the grounds of cruel and inhuman treatment. Following a five-year long, bitterly contested divorce proceeding Wife was awarded $1,000 per month as alimony *in futuro*, and $1,000 per month in child support payments for their then 15–year old son.[2]

The parties' affinity for protracted litigation did not end with their divorce.[3] The issues on appeal arise from Husband's third petition to terminate or reduce alimony. A review of some of the prior proceedings will aid in understanding the facts presently at issue.

Husband's first petition to terminate or reduce alimony was filed *pendente lite*, in November of 1991, four years prior to the entry of the final order in the divorce proceedings.[4] The stated basis for Husband's first petition was his desire to pursue a master's degree at Harvard University, which he claimed would increase his earning capacity. He contended he would be required to cease his medical practice while attending graduate school. The trial court granted the petition and reduced alimony and child support to $500 each per month until September 1992.[5] That order, however, did not conclude the first petition to modify alimony. In April 1993, the trial court "reviewed" the status of the first petition for modification and restored the original $1,000 per month alimony obligation. This was based on findings that Husband had the ability to pay $1,000 per month and that Wife needed the support.[6]

Husband was then endowed with both a medical degree and a master's degree and thus his earning capacity had been restored if not enhanced. Significantly, the trial court made a finding at that time that Husband was voluntarily underemployed, in an attempt to avoid or minimize his duty to pay alimony and child support, and that Husband's petition to reduce the alimony and child support was not in good faith.

---

1. The divorce was granted in 1990 but the divorce proceedings continued until the division of marital property and final order was entered in September of 1996.

2. The child is now emancipated and child support is not at issue.

3. Both Husband and Wife are frequent filers of petitions for contempt and to modify.

4. He sought a temporary termination or reduction in alimony and child support.

5. The September 1992 date coincided with Husband's expected graduation from graduate school.

6. Wife was also awarded reasonable attorney's fees in the amount of $3,500.00.

Husband filed a second petition to terminate or reduce alimony in 1996. He contended that he had suffered severe health problems since the original alimony award and that his medical condition prevented him from obtaining gainful employment. The trial court denied the second petition based upon a finding that Husband failed to carry his burden of proof. Husband appealed. This court affirmed, finding Husband had the ability to pay $1,000 per month and that Wife still had a need for such support.

The petition now at issue, Husband's third, was filed in 2001. He contends that his medical condition has deteriorated since the 1996 petition. He provided proof that he had undergone open heart surgery in 2000. He also testified that the heart surgery had contributed to the further deterioration of his health and greatly impaired his earning capacity. Husband contended that he was incapable of earning income, except for infrequent speaking engagements. He also testified that he had established his weakened medical state to the satisfaction of the Social Security Administration. He receives a disability benefit of $15,600 per annum. Husband testified that his disability benefits are his only income. Husband also presented expert medical proof. J. Jacques Carter, M.D. testified on his behalf via deposition.

Husband also presented evidence that Wife had a job, working as an executive assistant to the president of the Village Foundation in Alexandria, Virginia, earning $65,000 in 2001. Wife, however, countered explaining that her $65,000 a year employment terminated and that she was unable to find similar compensation. She further testified she could not find employment for months.[7] With the exception of her employment with Village Foundation, for which she was handsomely compensat-

ed for a period of time, Wife's annual compensation since her divorce has ranged between $22,000, her compensation at the time of the previous petition to modify, and $28,000, her present compensation at the filing of this petition.

Following an evidentiary hearing, the trial court denied the petition based upon findings that Husband's health had improved since the open heart surgery and that his health problems were manageable. The trial court further found that Husband was voluntarily unemployed and that he had an earning capacity sufficient to justify an alimony obligation of $1,000 per month. In the order from which this appeal lies, the trial court stated:

The petition for termination of alimony or reduction thereof is most respectfully denied and the petition is hereby dismissed.

. . .

The Court finds although Dr. Byrd has had health problems they are manageable and have improved since his surgery. He can and must produce enough income to meet his alimony obligation. He continues to hold down his income in an effort to avoid this Court's order. He now relies on his present wife's six figure income to meet the expenses he desires to pay.

The Court further finds the former wife, Mary Etta Byrd has a need for the alimony at the rate of one thousand dollars ($1,000.00) per month as of the trial of this cause and she must further supplement the same by finding employment to pay her total expenses.

Further, this Court has reviewed all the evidence presented at the trial and has reviewed Dr. Byrd's present medical history through the deposition of Dr. J.

7. Wife collected unemployment compensation    for several months while looking for work.

Jacques Carter and finds his health has improved.

The Court concludes Dr. Byrd continues to set upon a course to defeat the alimony order of this Court. The Court finds he has the ability to pay said amount and his former wife has a continuing need for this assistance.

### STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 296 (Tenn.Ct.App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn.Ct.App.2000); *The Realty Shop, Inc. v. RR. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn.Ct.App.1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn.1999). We also give great weight to a trial court's determinations of credibility of witnesses. In re *Estate of Walton,* 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465 (Tenn.Ct.App.2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

### ALIMONY

Modifications of alimony may be granted only upon a showing of substantial and material change in circumstances since entry of the original support order. Tenn. Code Ann. § 36–5–101(a)(1). A change is considered substantial when it significantly affects either the obligor's ability to pay or obligee's need for support. *Bogan v. Bogan,* 60 S.W.3d 721, 728 (Tenn.2001); *Watters v. Watters,* 22 S.W.3d 817, 821 (Tenn. Ct.App.1999). A change is considered material if the change occurred since the original support decree's entry. Even a substantial and material change of circumstances does not automatically result in a modification. *Bogan,* 60 S.W.3d at 730. Modification must also be justified under the factors relevant to an initial award of alimony, particularly the receiving spouse's need and the paying spouse's ability to pay. *Id.* Where there has been such a change in circumstances, the ability of the obligor spouse to provide support must be given equal consideration to the obligee spouse's need. *Id.* Generally, the party seeking the modification bears the burden of proving the modification is warranted. *Freeman v. Freeman,* 147 S.W.3d 234, 239 (Tenn.Ct.App.2003).

It is clear that willful and voluntary unemployment or underemployment will not provide a basis for modifying spousal support. *Watters,* 22 S.W.3d at 823. When called upon to determine whether a person is willfully and voluntarily unemployed or underemployed, the courts must consider the person's past and present employment, as well as the reasons for the unemployment or the taking of a lower paying job. *Id.* If the decision for unemployment or for taking a lower paying job is reasonable, the court will not find the person to be willfully and voluntarily underemployed. *Willis v. Willis,* 62 S.W.3d 735, 738 (Tenn.Ct.App.2001). Courts have confronted situations in which a divorced spouse seeks to avoid an alimony obligation by quitting work or by taking a lower paying job. *Walker v. Walker,* M2002–02786–COA–R3–CV, 2005 WL

229847 (Tenn.Ct.App. Jan.28, 2005). To remedy this strategy, a spouse's support obligation should not be measured by his actual income, but rather by his earning capacity. Tenn.Code Ann. § 36–5–101(d)(1)(E)(i) (2005).

The trial court concluded that Husband was voluntarily unemployed because he does not want to pay alimony. We agree with this conclusion. However, we are unable to agree that Husband's alimony obligation should not be reduced. While Husband's motives and credibility are suspect, as the trial court noted, his petition to reduce alimony is supported by uncontroverted medical proof provided in the deposition of Dr. Carter that his earning capacity is diminished due to a deterioration of his medical condition.

The most significant facts provided in Dr. Carter's testimony are the following: An echocardiography report dated June 20, 2000 was significantly worse, showing deterioration of the left-hand side of the heart—"it's not pumping well"; the right-hand side of the heart is still functionally depressed, although not as bad as it had been; husband has a major embolus (blood clot) to his lungs that led to a significant right-heart failure; he is in a frequent weakened condition; he sleeps a lot, has little endurance and suffers from several illnesses; he will not be able to do any work that requires physical endurance; he must rest several times during the day, and without this rest, his "two or three hours awake at a time" would not be very productive; he cannot drive; he cannot walk more than one-quarter block without sitting and resting; he can only be without oxygen for a limited amount of time.

The significance of the foregoing findings by Dr. Carter are ameliorated by the following additional findings by Dr. Carter: with pulmonary rehabilitation, his breathing may improve slightly; he can lecture but not on a full-time or day-to-day basis; and he cannot practice as an OB–GYN on a full-time basis. We read these findings by Dr. Carter to mean that Husband is impaired, he cannot work on a full-time basis, but he can work.[8] As a medical doctor, Husband's services are valuable, even in an impaired physical condition. Thus, Husband has an earning capacity; it is merely less than it would be if he were able to work full time, whether in an OB–GYN practice or as a lecturer. The evidence in the record shows that Husband has authored two books and has been compensated for such efforts with royalties. He has also been retained for speaking engagements for which he has been compensated. While Husband may no longer be able to practice medicine in the same manner and be compensated as before, he is economically empowered by a medical degree, thus he has an earning capacity.

Willful and voluntary unemployment or underemployment will not provide a basis for modifying spousal support. *Watters,* 22 S.W.3d at 823. Rather than using his medical education to earn income, Husband has voluntarily chosen to rely on Social Security disability payments and support provided by his current wife. Husband's voluntary unemployment does not exempt him from his obligations; to the contrary, his obligation should be measured not by his actual income but by his earning capacity. *See* Tenn.Code Ann. § 36–5–101(d)(1)(E)(i). We therefore find

---

**8.** We are mindful that Husband was approved for Social Security disability status in 1997 and that he has received disability payments since that date. In 2002, Husband received $16,044.00 in Social Security payments after medical insurance deductions. This however does not preclude this court from finding that he has an earning capacity and is voluntarily unemployed.

that the evidence does not preponderate against the trial court's finding that Husband is voluntarily unemployed. Therefore, Husband's alimony obligation should not be terminated but should be modified based on his ability to pay and Wife's need.

The second component in an alimony analysis is need, that being whether and to what extent the recipient of alimony needs such support. *Bogan*, 60 S.W.3d at 730. Husband contends that Wife's earning capacity is now $65,000, instead of $22,000, which was her rate of compensation as of the previous petition to modify alimony. Wife, however, has explained that her $65,000 a year employment was short lived and she has been unable to find similar compensation. In fact, she has not found employment providing a salary equal to one-half of that amount. With the exception of her work for the Village Foundation, Wife's annual compensation has not exceeded $28,000 per annum. Evidence that Wife was temporarily employed at a higher income is a factor to be considered along with all other relevant factors. However, Wife's temporary employment at a higher pay scale should not be the only factor. Her increased income was short lived and she has been unable to find other employment at half the compensation. Based on these factors, we find that Wife's present need is not as great as before; however, she still has a need for support.

Husband's earning capacity has been reduced by the deterioration of his physical condition and Wife's need is not as great as before. Therefore, Husband's alimony *in futuro* obligation is reduced to $350 per month, retroactive to the filing of the petition at issue.

### ATTORNEY'S FEES

Lastly, Husband appeals the trial court's award of $3,500 attorney's fees to Wife. The trial court is given wide discretion in awarding attorney's fees and expenses. *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn.App.1987). This court will not interfere with the trial court's award unless there is an abuse of discretion. *Id.* While Husband's petition to reduce alimony is partly successful, it does not preclude him from paying attorney's fees. Husband brought this action and Wife employed counsel at the trial level to defend the action. We find that the trial court did not abuse its discretion, and thus affirm the assessment of Wife's attorney's fees against Husband.

### CONCLUSION

The judgment of the trial court is therefore reversed and this matter is remanded with instructions to set Husband's alimony obligation at $350 per month, with such modification retroactive to the filing of the petition at issue. We affirm the award of attorneys fees to Appellee. Appellee was not represented by counsel on appeal; therefore, she did not incur such fees on appeal and there are none to award. Costs of appeal are assessed against the appellant, Dr. W. Michael Byrd.