IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2011 Session

# WILLIAM JAMES JEKOT v. PENNIE CHRISTINE JEKOT

**Appeal from the Circuit Court for Rutherford County**
**No. 48908    Royce Taylor, Judge**

**No. M2010-02467-COA-R3-CV - Filed October 25, 2011**

Wife appeals the trial court's decision to substantially reduce her alimony, contending there has not been a substantial and material change of circumstances. The parties were divorced in 2005 following a thirty year marriage. In 2008, Husband filed a petition for modification of alimony. The trial court held that a decrease in Husband's income constituted a substantial and material change of circumstance, which warranted the reduction in alimony. The trial court also held that Husband was entitled to interest on overpayments of alimony. Wife appealed. We reverse based on the finding that there was not a substantial and material change of circumstance. We also find that although Husband is entitled to recover overpayments of alimony following the first appeal, he is not entitled to interest on the overpayments. Wife has requested her attorney's fees. Applying the principles stated in *Gonsewski v. Gonsewski*, __S.W.3d __, 2011 WL 4116654 (Tenn. Sept. 16, 2011), we find Wife is not entitled to recover her attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in part, Reversed in part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Darrell L. Scarlett, Murfreesboro, Tennessee, for the appellant, Pennie Christine Jekot.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellee, William James Jekot.

## OPINION

This is the second appeal following the divorce of William James Jekot, M.D., ("Husband") and Pennie Christine Jekot ("Wife") on October 5, 2005. The parties had been married almost thirty years at the time of their divorce.

In the 2005 Divorce Decree, Husband was awarded marital property in the amount of $1,459,116, and Wife was awarded $1,468,758. A substantial component of the marital property was two medical office buildings, which the court ordered to be sold and the proceeds to be divided equally. In the 2005 divorce, the trial court awarded Wife rehabilitative alimony for five years to be paid as follows: $15,000 per month for the first twelve months, $10,000 per month for the next twenty-four months, and $5,000 per month for the final twenty-four months. Husband appealed from that decision.

In the first appeal, *Jekot v. Jekot*, 232 S.W.3d 744 (Tenn. Ct. App. 2007), this court modified the alimony award in two ways. First, the court determined that the alimony should have been classified as alimony in futuro, not rehabilitative. This was because Wife, who had been out of the workforce for nearly twenty years, had demonstrated a need for such alimony, stating "at the time of trial, Wife was fifty-five years of age, and we do not believe it is realistic to expect that she will be able to effectively compete for employment as she nears an age at which many retire." *Id*. at 753. Second, the court modified the payment schedule by requiring that the alimony, which was to be paid for sixty months, be paid in equal installments of $9,000 per month. *Id*. at 752. The modification of the monthly payments to $9,000 per month was based on the finding that $9,000 was "consistent with Wife's actual monthly needs." *Id*. Husband filed a Rule 11 petition for permission to appeal to the Supreme Court, which was denied on May 14, 2007, and mandate issued on May 31, 2007.

Pursuant to an agreement by the parties, an Agreed Order was entered in the trial court on January 8, 2008, which modified the division of the marital estate by awarding each party one of the two medical office buildings that previously was ordered to be sold. Husband was awarded the medical condominium located at 1029 Highland Avenue and Wife was awarded the medical condominium located at 1035 Highland Avenue. The buildings were substantially equal in value and both were located in Murfreesboro, Tennessee.

On October 3, 2008, three years after the divorce, Husband filed a petition for modification of alimony, contending that a substantial and material change of circumstances had occurred that warranted a reduction of his alimony obligation. Husband contended that his income had decreased dramatically in the three years following the divorce. Husband further contended that Wife's need for alimony in futuro had diminished, due in part to income she now received from the medical office building she was awarded pursuant to the January 2008 Agreed Order. Husband also requested that he receive ten percent interest on the alimony he had overpaid following the decision of this court in the first appeal.

Following a hearing on April 29, 2010, the trial court entered an order finding that a substantial and material change of circumstance had occurred in that Husband's "practice income" had decreased by one-third. The trial court found that Husband's Schedule E income

in 2005 at the time of the divorce was $522,953.00, and that Husband's Schedule E income for 2009 was $348,929.00. Therefore, the court held that the amount of alimony paid by Husband should be reduced to $5,000 per month. The trial court also held that Husband was entitled to $575.00 in interest on the overpayment of alimony. Wife filed a motion to alter or amend, which the trial court denied. Wife filed a timely appeal.

## ANALYSIS

Wife raises three issues on appeal. First, she contends that the trial court abused its discretion in ordering a modification of alimony in futuro. Second, she contends that the trial court erred in ordering Wife to pay interest on the voluntary overpayments of alimony made following the release of the Court of Appeals opinion in *Jekot v. Jekot*, 232 S.W.3d 744. Lastly, Wife argues that the trial court erred by not awarding her attorney's fees. We shall address each issue in turn.

## I.
### MODIFICATION OF ALIMONY

The appellate standard of review of a trial court's decision on matters of alimony was recently stated in detail in *Gonsewski v. Gonsewski*, No. M2009–00894–SC–R11–CV, __ S.W.3d __, 2011 WL 4116654, at *3 (Tenn. 2011).

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor. . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven [footnote omitted] and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support

decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

Accordingly, we begin our analysis with the presumption that the trial court's decision to reduce alimony was the correct decision and review the evidence in the light most favorable to that decision. *Gonsewski*, 2011 WL 4116654, at *3.

Wife contends that the trial court erred in determining that a substantial and material change occurred, which warranted the reduction of Husband's alimony payments. The trial court found that Husband's practice income as an orthopedic surgeon had decreased since the time of the divorce; however, Wife contends that the trial court erred by focusing solely on Husband's "practice income" as opposed to all of his income. She contends the evidence does not support the trial court's finding because Husband's income has not decreased.

The applicable standards for modification of an award of alimony are as follows:

Modifications of alimony may be granted only upon a showing of substantial and material change in circumstances since entry of the original support order. Tenn. Code Ann. § 36–5–101(a)(1). A change is considered substantial when it significantly affects either the obligor's ability to pay or obligee's need for support. *Bogan v. Bogan,* 60 S.W.3d 721, 728 (Tenn.2001); *Watters v.*

-4-

*Watters,* 22 S.W.3d 817, 821 (Tenn. Ct. App.1999). A change is considered material if the change occurred since the original support decree's entry. Even a substantial and material change of circumstances does not automatically result in a modification. *Bogan,* 60 S.W.3d at 730. Modification must also be justified under the factors relevant to an initial award of alimony, particularly the receiving spouse's need and the paying spouse's ability to pay. *Id.* Where there has been such a change in circumstances, the ability of the obligor spouse to provide support must be given equal consideration to the obligee spouse's need. *Id.* Generally, the party seeking the modification bears the burden of proving the modification is warranted. *Freeman v. Freeman,* 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003).

*Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005).

Following the April 29, 2010, the trial court found that Husband's "practice income" had decreased by one-third, that Husband's Schedule E income in 2005, the year of the divorce, was $522,953, and that Husband's Schedule E income for 2009 was $348,929. It was upon these findings of fact, and findings that Wife's need for alimony had substantially decreased, that the trial court reduced Husband's alimony obligation from $9,000 per month to $5,000 per month. We have determined that the evidence in this record preponderates against these material findings of fact.

## A.
### HUSBAND'S ABILITY TO PAY ALIMONY

At all times material to this appeal, Husband has been a successful orthopedic surgeon.[1] Husband's tax returns for the years of 2001 through 2003 were submitted into evidence at the divorce trial as evidence of his ability to pay alimony.[2] Husband's income for the years of 2001 through 2003 was $440,886, $380,969, and $391,252, respectively. Based upon this income, Husband's expenses, Wife's needs, and other applicable factors, and this court's determination in the first appeal that it was not "realistic to expect that [Wife] will be able to effectively compete for employment as she nears an age at which many retire,"

---

[1]Husband has been a sole practitioner in the Rutherford County area since 1983.

[2]For reasons unclear from the record, Husband's income for the year of 2004 was not considered at the divorce trial nor was it provided for purposes of this appeal. As the entry of divorce was entered in October 2005, Husband's 2005 tax return was unavailable at the time of the entry of divorce and was not considered by the trial court.

Wife was awarded alimony in futuro for sixty months at $9,000 a month. *Jekot*, 232 S.W.3d at 753.

In his petition for modification filed in 2008, Husband asserts that his alimony obligation should be reduced for three reasons. First, he states that the income from his private practice has substantially and materially declined since alimony was set at the time of the divorce. Second, Husband states that his expenses have increased substantially and materially since that time. Third, he asserts that Wife's needs have decreased.

We will examine each of these issues in turn to determine whether Husband has proven that substantial and material changes have occurred that justify modification of his alimony obligation. *See Byrd*, 184 S.W.3d at 691.

Husband's Income – Then and Now

Although the divorce decree was entered in 2005, Husband's income tax returns for 2004 and 2005 were not available at the time of the divorce proceedings. Thus, the initial alimony award, which is the subject of this petition to modify, was based on Husband's income tax returns for 2001, 2002 and 2003 and other relevant circumstances discussed in the parties first appeal.[3] As Husband's tax returns reveal, his taxable income for 2001 to 2003, the three years utilized to set alimony at the time of the divorce, was $1,213,107. Accordingly, Husband's average taxable income for these three years was $404,369.

During the 2010 hearing, Husband testified that he was still working as an orthopedic surgeon as a solo practitioner and, in addition thereto, he worked as an "on call" doctor four days a month at hospital emergency rooms, and that he was also receiving passive income from his partial ownership of a surgery center and a MRI scanner. Husband further testified that his reported income on his tax returns for the four years since the divorce, 2006 through 2009, was $663,341; $637,413; $616,940; and $502,811 respectively. His total income for 2006 through 2009 was $2,420,505 and the average income for these four years was $605,126.

Although Husband's average income for the four years after the divorce substantially exceeds the income upon which alimony was established at the time of the divorce, in fact it is $200,000 more per year than the average of his pre-divorce income, Husband insists that his ability to pay alimony has substantially and materially decreased. In arguing that his

_____

[3]In Vol. II, pp. 55-58, Husband testified that he provided his 2001-2003 income tax returns for consideration during the divorce trial. For reasons not explained, Husband's tax return for 2004 was not introduced in the divorce in 2005, and it was not admitted into evidence in these proceedings.

income has decreased since the divorce in 2005, Husband relies on his 2005 income of $691,456 as a baseline. We, however, find this inappropriate in that his 2005 income tax return was unavailable at the time of the divorce and, thus, it was not considered by the trial court when Husband's current alimony obligation was established. As we noted above, and acknowledged by Husband's testimony, the financial evidence introduced in the divorce proceedings was based on Husband's income tax returns for three years, 2001 through 2003; 2005 was not considered. Thus, it is inappropriate to use 2005 as a baseline upon which the initial alimony award was based.

Husband's gross income as shown on his income tax returns for eight of the previous nine years, 2001 - 2009, excluding 2004, was:

| Year | Total Income | |
|------|-------------|---|
| 2001 | $440,886 | |
| 2002 | $380,969 | 2001-03 per year average: $404,369 |
| 2003 | $391,252 | |
| (Husband's tax return for 2004 is not in the record) | | |
| 2005 | $691,456 | |
| 2006 | $663,341 | |
| 2007 | $637,413 | |
| 2008 | $616,940 | 2006-09 per year average: $605,126 |
| 2009 | $502,811 | |

Husband's average income for 2001 to 2003, the three years utilized to set alimony in 2005, was $404,369; yet, his average income for the four years since the divorce, 2006 through 2009, was $605,126. Moreover, Husband's income for each of the four years following the divorce (2006 - $663,341; 2007 - $637,413; 2008 - $616,940; and 2009 - $502,811) is greater than the average income upon which alimony was initially established, $404,369.

We acknowledge Husband's argument that income for his solo practice has decreased, and we agree it has decreased; however, it is inappropriate to focus on one source of income when the party has multiple sources of income. *See Church v. Church*, 346 S.W.3d 474, 486 (Tenn. Ct. App. 2010) (quoting *Killian v. Killian*, No. M2010–00238–COA–R3–CV, 2010 WL 3895515, at *4 (Tenn. Ct. App. Oct. 5, 2010) (stating the court "is not so much concerned with a reduction in income from one source as it is concerned with whether Petitioner has sustained a significant change in his income from all sources."). For example, Husband's Schedule E income decreased from 2005, when it was $522,929, to $348,929 in 2009, and the trial court apparently focused on this to support its finding that Husband's income has decreased. We, however, believe the trial court erred as a matter of law by

limiting its examination of Husband's ability to pay alimony to Husband's Schedule E income instead of considering Husband's *total income* from all sources to determine whether there had been a substantial and material reduction in Husband's ability to pay alimony. *See Church*, 346 S.W.3d at 486; *Killian*, 2010 WL 3895515, at *4.

Determining a party's income is a question of fact that requires careful consideration of all the attendant circumstances. *See Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). As this court recently observed in *Bordes v. Bordes*, No. M2010–02036–COA–R3–CV, 2011 WL 4542255, at *2 (Tenn. Ct. App. Sept. 30, 2011):

> A trial court's decision regarding modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "[T]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Gonsewski v. Gonsewski*, [No.] M2009–00894– SC–R11CV, 2011 WL 4116654 at *3 (Tenn. Sept. 16, 2011) (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). We review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, when the trial court has set forth its factual findings in the record, we will presume the correctness of those findings unless the evidence preponderates against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Having considered all attendant circumstances regarding Husband's income from all sources, we have concluded that the evidence preponderates against the trial court's finding that Husband's income or ability to pay alimony has substantially or materially diminished since the award to be modified was established.

<u>Husband's Expenses – Then and Now</u>

The second argument Husband makes is that his expenses have increased dramatically. This is true because Husband now pays $108,000 a year in alimony, an expense Husband did not have prior to the divorce. However, it is abundantly clear from Husband's testimony that the only substantial change in his expenses is that he now pays alimony. This is evident from Husband's testimony at the modification hearing: "[t]he alimony has greatly affected my income and my ability to save for my retirement."

We, however, find Husband's "alimony expense" argument without merit. Although his duty to pay $108,000 per year is substantial and it is an expense he did not have prior to

the entry of the divorce decree, this "expense" is not *material* to the petition to modify alimony. To constitute a *material change,* the change must occur *after* the entry of the entry of the decree to be modified and it must have been *unanticipated*. *Byrd*, 184 S.W.3d at 691; *Bogan*, 60 S.W.3d at 728; *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (stating that a change in circumstances is "material" when the change occurs since the date the alimony was ordered, and the change was not within the contemplation of the parties when they entered into the property settlement).

Husband's ability to pay $108,000 a year in alimony and his duty to pay this expense after the entry of the decree were considered and recognized when the alimony award at issue was entered. Accordingly, Husband's $108,000 alimony obligation was not unanticipated; further, the alimony expense did not occur *after* the entry of the divorce decree, it was mandated *in* the divorce decree. Thus, Husband's alimony expense of $108,000 per year does not constitute a *material* change for purposes of a petition to modify alimony.

B.

WIFE'S NEED FOR ALIMONY

The trial court determined that Wife has additional income from the medical office building she was awarded in the division of marital property and, thus, her need for alimony is less. We, however, find that the evidence preponderates against this factual finding. This is because the income-producing asset was awarded to Wife in the divorce and, although the asset was originally to be sold, along with a similar asset awarded to Husband, with the proceeds divided equally between the former spouses, in either form – as cash to be invested or as rental property – it was an asset that would produce income. Therefore, the fact that Wife receives rental income from the medical office building, instead of dividends or interest earned from investing the cash proceeds from the sale of the building, is neither unanticipated or unforeseen.

In order for Husband to use Wife's income from the medical office building as a factual basis upon which to establish that Wife's income is greater and thus her needs are less than when alimony was established, Husband must show that this income was unanticipated or unforeseen when alimony was set. *See Seal v. Seal*, 802 S.W.2d 617, 621 (Tenn. Ct. App. 1990). The proceeds from the sale of the parties' marital residence and dividends or interest income produced from stocks or bonds received in the division of the marital property were the subject of a post-divorce petition to modify alimony in *Seal*. The question was whether these post-divorce sources of income could be considered for purposes of a material change in circumstances. *Id*. We held that:

From a reading of [Tenn. Code Ann.] § 36-5-101 it may be presumed that property received by an alimony recipient in the division of marital property might produce income. *Absent the Husband establishing that this income was unanticipated or unforeseen*, any dividend or interest income earned by an alimony recipient from stocks or bonds received under a property settlement agreement should not be considered as a factor constituting a substantial and material change in circumstances to support a reduction in alimony payments.

*Id*. (emphasis added).

Here, the original divorce decree directed the sale of the two office buildings with the cash proceeds to be divided equally between the spouses. Accordingly, as we noted in *Seal*, we may presume that the cash proceeds Wife was to receive in the division of marital property might produce income. *Id*. The fact that the parties subsequently agreed not to sell the office buildings but, instead, award each spouse one of the income-producing office buildings does not constitute additional income for Wife that was not anticipated or foreseen when the marital estate was divided and alimony was originally set. *Id*.[4]

Having reviewed the evidence in the light most favorable to the trial court's decision, *see Gonsewski*, __ S.W.3d __, 2011 WL 4116654, at *3, we have concluded that the evidence preponderates against the trial court's finding that Husband has experienced a *substantial* or *material* change in the form of a decrease in his income *since the entry of the original support order*.

We have determined that the evidence preponderates against the trial court's finding that a substantial and material change of circumstance occurred since the entry of the order setting alimony in 2005. Because there is no substantial and material change in the parties' circumstances since alimony was set, the trial court erred, as a matter of law, by modifying Husband's alimony obligation. *See Byrd*, 184 S.W.3d at 691 (citing Tenn. Code Ann. § 36–5–101(a)(1)) (stating modifications of alimony may be granted only upon a showing of a substantial and material change in circumstance since entry of the original support order). Accordingly, we reverse the trial court's modification and remand with instructions that the alimony award set forth in the divorce decree be reinstated.

---

[4]We also note that Husband testified that he received the rental income on this property from the time of the divorce until the entry of the Agreed Order in 2008 and used this income to pay off the debt on the property. *See* Vol. II, pp. 68-69.

## II.
### VOLUNTARY OVERPAYMENTS OF ALIMONY

Wife presents two arguments that pertain to Husband's voluntary overpayment of $1,000 a month above his alimony obligation for several months following this court's decision in the first appeal, which reduced his monthly obligation from $10,000 a month to $9,000 a month.

First, Wife argues that the overpayment was a gift and Husband may not recover any of the overpayments. The trial court found it was not a gift and we find no error with the trial court's decision on this issue. Accordingly, we affirm the trial court on this issue.

Second, Wife contends the trial court erred in ordering her to pay interest on the overpayments. We agree with Wife on this point. Husband continued to pay $10,000 per month, instead of $9,000 as this court determined in the first appeal, for several months after this court announced its decision. Although Husband is entitled to recover these funds, or to apply the overpayment as a credit against his future alimony obligations, it would be inequitable to require Wife to pay interest on funds Husband voluntarily and knowingly overpaid. Moreover, we find no precedent upon which to support such an award based on the unique facts of this case. Accordingly, we reverse the trial court's finding that Wife shall pay ten percent interest on the overpayment.

On remand, the trial court should establish a schedule by which Husband may recoup the overpayment or by which Wife shall reimburse Husband for the overpayment of alimony.

## III.
### ATTORNEY'S FEES

For her final issue, Wife contends that the trial court abused its discretion in failing to award her attorney's fees.

As our Supreme Court recently stated:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. *See* Tenn.Code Ann. § 36–5–121(h)(1) ("alimony in solido may include attorney fees, where appropriate"); *Herrera v. Herrera,* 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorney's fees is within the sound discretion of the trial court. *Crabtree*, 16 S.W.3d at 361; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with any alimony award, in deciding whether to award

attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36–5–121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See id.* at 185.

*Gonsewski*, __ S.W.3d __, 2011 WL 4116654, at *10.

The trial court, in the exercise of its discretion, determined that Wife was not entitled to recover her attorney's fees and we have no difficulty concluding that the trial court acted within its discretion in denying her request. At all times material to Husband's petition for modification of alimony, Wife – although not working – possessed significant assets that she received in the divorce, as well as an income-producing asset in the medical office building. Moreover, Wife did not establish that she was unable to secure counsel, either at trial or on appeal, but for an award of attorney's fees. *See id*. at *11. Accordingly, we affirm the trial court's decision to deny Wife's request for attorney's fees.

## IN CONCLUSION

The judgment of the trial court is reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE