IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 5, 2013 Session

## RITA GRACE TIDWELL HICKMAN v. BOBBY SPENCER HICKMAN

**Appeal from the Chancery Court for Hamilton County**
**No. 10-0687      W. Frank Brown, III, Chancellor**

No. E2013-00940-COA-R3-CV-FILED-FEBRUARY 26, 2014

In this post-divorce case, Rita Grace Tidwell Hickman ("wife") appeals the trial court's reduction of her transitional alimony and its refusal to grant her attorney's fees, expenses and discretionary costs. The trial court granted the petition of Bobby Spencer Hickman ("husband") to reduce alimony based on Tenn. Code Ann. § 36-5-121(g)(2)(C) (2010), which allows a suspension of transitional alimony when the recipient lives with a third person and the recipient fails to rebut the statutory presumption that the third person is either contributing to, or receiving contribution from, the alimony recipient, and, therefore, the alimony recipient does not need the amount of alimony previously awarded. The third person was the parties' son, Ethan, who had turned eighteen shortly before husband filed his petition. Wife continued to allow Ethan to live with her, and provided food and other necessities to him, after he turned eighteen. We hold that wife rebutted the statutory presumption by showing that her financial situation had not significantly changed, and actually had deteriorated, since the award of transitional alimony. Wife demonstrated a continuing need for alimony notwithstanding her willingness to allow her son to continue living with her and to support him after his eighteenth birthday. The judgment of the trial court is reversed. This case is remanded to the trial court for the court to determine wife's fees and expenses at the trial court level and her discretionary costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Selma Cash Paty, Chattanooga, Tennessee, for the appellant, Rita Grace Tidwell Hickman.

Bobby Spencer Hickman, East Ridge, Tennessee, appellee, pro se.

## OPINION

## I.

In May, 2011, the parties were divorced after a 21-year marriage. The trial court's final judgment granted wife a divorce on the ground of inappropriate marital conduct; divided the marital estate; incorporated a parenting plan for then-sixteen-year-old Ethan; established husband's child support for Ethan at $507 per month; and awarded wife transitional alimony. The parties have one other child, Amelia,[1] who was over eighteen and attending college at the University of Tennessee at Knoxville at the time of the divorce judgment. Regarding the transitional alimony award, the trial court stated the following in its memorandum opinion and order:

> [Wife] has been out of the workforce for over eight years. She has missed building her Social Security or other retirement during this period. [Husband] has a better chance to earn income well in excess of what [wife] can earn. [Husband] is more than three years younger than [wife]. His health is also better than [wife's] health.[2] The court believes that the following transitional alimony is appropriate:
>
> June 15. 2011 – Dec. 15, 2013  $1,250.00 per month
> Jan. 15, 2014 – Dec. 15, 2015  $1,000.00 per month
> Jan. 15, 2016 – May 15, 2017  $   850.00 per month

The court ordered the marital residence, which was unencumbered, sold in accordance with the parties' agreement. It granted wife possession of the marital residence while it was on the market, and ordered the parties to divide the proceeds from the sale of the house in accordance with a formula provided in the final judgment. Wife was designated primary residential parent of Ethan, who lived with wife most of the time while attending high school.

---

[1]In the record the daughter's name is sometimes spelled "Amelia" and sometimes "Amellia." It is not clear which is the correct spelling. "Amelia" seems the more likely spelling so we have chosen to use it in this opinion.

[2]The trial court found that wife has health conditions "such as fibromyalgia and carpal tunnel syndrome, congestive heart failure and high cholesterol."

On September 7, 2012 – one day after Ethan's eighteenth birthday – husband filed a petition asking the court, among other things, to reduce or eliminate his transitional alimony pursuant to Tenn. Code Ann. § 36-5-121(g)(2), which provides in pertinent part as follows:

> (2) Transitional alimony shall be nonmodifiable unless:
>
> *       *       *
>
> (C) The alimony recipient lives with a third person, in which case a rebuttable presumption is raised that:
>
> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
>
> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Husband alleged that actually three persons were or had been living with wife: Ethan, Amelia, and Ethan's high school friend, J.T. Pekala. Wife filed a motion for partial summary judgment on the issue of modification of alimony. In support of her motion, wife filed her affidavit in which she stated the following in pertinent part:

> I am not living with anyone who is contributing to my support.
>
> I am not living with anyone to whose support I am contributing except our son Ethan. Our daughter, Amelia, who is in college just as she was when the case was tried, stays in our home just as she has all of her life.
>
> It was not a change of circumstance warranting a change in alimony that Ethan continued to reside with me. [Husband] terminated health insurance for Ethan, so I had to put him on my insurance. [Husband] knew that Ethan needed insurance and that if he cancelled his insurance, I would have to add him to my policy or pay his medical bills because Ethan does not have the money to do so.

I help both of our children when I can financially afford to do so but unfortunately with[out] any child support for Ethan and [husband] failing to contribute to Amelia's education, I cannot assist them as much as I wish I could and would be appropriate for a parent with children still being educated and/or just getting started.

My current financial circumstances do not . . . warrant a modification or termination of the transitional alimony awarded by this Court.

(Numbering in original omitted.) The trial court denied wife's motion for partial summary judgment.

After a hearing, the trial court entered an order finding that Ethan was the only person living with wife at the time of the hearing. The trial court's order further states as follows:

Ethan lives in a dwelling co-owned by his parents and possessed by his mother, pending sale of the home. He receives the benefits of utilities such as water and electricity. He is warmed by the propane gas purchased by [wife]. Ethan eats food purchased by [wife]. She pays for the insurance on the vehicle he drives. She maintains the vehicle and gives Ethan gas money. Thus, to some extent, [wife] does "support" her 18-year old son.

\* \* \*

[T]he court has found that [wife] supports Ethan for general expenses of $400.00, automobile insurance of $75.96, and $150.00 for other gas, automobile, utility, and incidental expenses per month. The total average expenditure by [wife] for Ethan is $625.96 per month. The court rounds the figure to $625.00 per month.

If [husband's] transitional alimony is decreased from $1,250.00, by subtracting a rounded-off $625.00, he would still be paying $625.00 per month. [Wife's] net monthly income from her employment is $2,553.83. If $625.00 is added to this amount, then her monthly income would be $3,178.83, just above her

monthly stated expense. The court notes that [wife's] expense statement does not include a rent or mortgage payment.

The trial court reduced husband's transitional alimony by the following amounts: for the period February 15, 2013 - December 15, 2013, from $1,250 to $625 per month; for January 15, 2014 - December 15, 2015, from $1,000 to $375 per month; and for January 15, 2016 - May 15, 2017, from $850 to $225 per month. Wife timely filed a notice of appeal.

II.

Wife raises the following issues:

(1) Whether the trial court erred in denying wife's motion for partial summary judgment on the issue of whether to modify transitional alimony.

(2) Whether the trial court erred in finding that the parties' eighteen-year-old son, who continued to live with his mother after he graduated from high school, was a "third person" for purposes of modifying transitional alimony under Tenn. Code Ann. § 36-5-121(g)(2).

(3) Whether the trial court erred in concluding that wife did not need the full amount of transitional alimony and reducing the alimony award.

(4) Whether the trial court should have awarded wife her attorney's fees.

Husband, proceeding pro se on appeal, raises several additional issues. Most of husband's issues, however, are an attempt to re-open certain rulings of the trial court's final judgment granting the divorce. Husband argues that the trial court should not have awarded wife alimony in the first place, and that the trial court erred in certain aspects of its division of the marital estate. The final divorce order became final 30 days after its entry on May 18, 2011. Neither party appealed that order. The time for appealing the trial court's final divorce order has long since passed, and consequently, the only issue raised by husband that is properly before this Court is whether the trial court erred in finding that only one third person lived with wife.

III.

A party challenging a trial court's alimony decision faces a fairly stringent standard of review on appeal. The Supreme Court has articulated that standard as follows:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.
>
> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (internal citations and footnote omitted); *see also* *Jekot v. Jekot*, 362 S.W.3d 76, 79-80 (Tenn. Ct. App. 2011); *Church v. Church*, 346 S.W.3d 474, 481-82 (Tenn. Ct. App. 2010).

IV.

We first briefly address wife's argument that the trial court erred by refusing to grant her summary judgment on the issue of modification of transitional alimony. This Court recently addressed a similar argument in *Wilkinson v. Wilkinson*, No. W2012-00509-COA-R3-CV, 2013 WL 614708 at *6 (Tenn. Ct. App. W.S., filed Feb. 19, 2013), where a wife argued that "the trial court erred in its failure to grant partial summary judgment on [the husband's] failure to pay transitional alimony," and stated:

We glean from the record that the court did not grant summary judgment on the issue because of the existence of a dispute of fact concerning whether Ms. Wilkinson and Ms. Morgan were cohabitating. It is well settled that, "when the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue as to a material fact, the overruling of that motion is not reviewable on appeal when subsequently there has been a judgment rendered after a trial on the merits." *Arrow Electronics v. Adecco Employment Servs., Inc.*, 195 S.W.3d 646, 650 (Tenn. Ct. App. 2005). Because this case proceeded to hearing on the merits after the denial of partial summary judgment, we are unable [to] review the question of whether Ms. Wilkinson was entitled to partial summary judgment.

Likewise, in this case, the trial court predicated its denial of summary judgment on the existence of a genuine issue of material fact, and thus the question of the correctness of the trial court's decision is not reviewable since "this case proceeded to hearing on the merits." *Id*.

Husband argues the trial court erred in finding that only one person, Ethan, lived with wife, contrary to his allegation that both Amelia and Ethan's high school friend, J.T. Pekala, were each also a "third person" living with wife for the purpose of the transitional alimony modification statute. This Court has stated on several occasions that "the living situation *at the time of trial* must be considered in determining whether the statute applies." *Strait v. Strait*, No. E2005-02382-COA-R3-CV, 2006 WL 3431933 at *5 (Tenn. Ct. App. E.S., filed Nov. 29, 2006) (emphasis in original) (citing *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586 at *5-6 (Tenn. Ct. App. M.S., filed Aug. 23, 2004) and *Woodall v. Woodall*, No. M2003-02046-COA-R3-CV, 2004 WL 2345814 at *4 (Tenn. Ct. App. M.S., filed Oct. 15, 2004)). Wife testified that she allowed Pekala to stay with them for a period of about four months after he was kicked out of his parents' house. Pekala left after four months, and wife testified that she did not financially support him or receive support from him. Both wife and Amelia testified that Amelia lived in Knoxville at the University of Tennessee while school was in session and that she generally came home to visit and stayed with wife on school breaks. The trial court concluded "that neither J.T. Pekala nor Amelia Hickman were living with [wife]." The court further found that

Mr. Pekala had left in May of 2012 after four months in the home. [Amelia's] primary residence has been in Knoxville

> while she attends college at UTK. She was not "living" with her
> mother.

The evidence does not preponderate against these findings. Husband's issue is without merit.

We next address wife's argument that Ethan is not a "third person" for purposes of the transitional alimony modification statute. This issue requires us to construe Tenn. Code Ann. § 36-5-121(g). The primary rule governing statutory construction requires us to ascertain and give effect to the legislature's intent as expressed in the statute. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007). To determine legislative intent, we first examine the language of the statute itself, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005)*,* presuming that "every word in a statute has meaning and purpose" and should "be given effect if the obvious intention of the General Assembly is not violated by so doing." *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). In construing a statute, a court must "determine legislative intent from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). If the language of the statute is clear and unambiguous, "we apply its plain meaning in its normal and accepted use." *Lanier*, 229 S.W.3d at 661; *see also In re Adoption of A.M.H.*, 215 S.W.3d at 808 ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.").

As pertinent to the issue under discussion, the governing statutory language provides that "[t]ransitional alimony shall be nonmodifiable unless . . . [t]he alimony recipient lives with a third person . . . ." There are no limiting or restricting modifiers on "third person," which we must construe to mean, in this case, *any* person other than the alimony recipient.

Transitional alimony, the newest form of alimony in Tennessee, was created by the legislature in 2003. Consequently, there are relatively few appellate opinions interpreting the "cohabitation" provision of the transitional alimony statute. *See generally Reed v. Reed*, No. M2011-00980-COA-R3-CV, 2012 WL 1107888 at *10 (Tenn. Ct. App. M.S., filed Mar. 30, 2012); *Audiffred v. Wertz*, No. M2009-00415-COA-R3-CV, 2009 WL 4573417 at *2-3 (Tenn. Ct. App. W.S., filed Dec. 4, 2009); *Harris v. Harris*, No. M2008-00601-COA-R3-CV, 2009 WL 416007 at *2 (Tenn. Ct. App. W.S., filed Feb. 18, 2009). However, as the trial court correctly noted, the statute governing awards of alimony in futuro, Tenn. Code Ann.

§ 36-5-121(f)(2)(B), contains an identical cohabitation provision.[3] Because the language at issue in this case is identical, prior case law interpreting § 36-5-121(f)(2)(B) is highly informative and applicable here.

Tennessee courts have consistently held that the "lives with a third person" language applies to any third person, including adult children. *See Azbill v. Azbill*, 661 S.W.2d 682, 686 (Tenn. Ct. App. 1983) (observing that "[n]owhere does [the statute] indicate that there must be any type of liason, sexual or otherwise" between alimony recipient and third person); *Edwards v. Edwards*, No. E2004-02490-COA-R3-CV, 2005 WL 2043580 at *2 (Tenn. Ct. App. E.S., filed Aug. 25, 2005) ("third person" included adult daughter and son-in-law); *Woodall*, 2004 WL 2345814 at *4 (stating that "the nature of the relationship" between alimony recipient and third person "is irrelevant to the statute"); *Benning v. Benning*, No. 01A01-9805-CV-00238, 1999 WL 51877 at *2 (Tenn. Ct. App. E.S., filed Feb. 5, 1999) ("the statute does not require any specific kind of relationship for its application. It applies in all cases where an alimony recipient 'lives with a third person,' regardless of the relationship, or the gender of the third person"); *Hubbard v. Hubbard*, No. 03A01-9603-CV-00108, 1996 WL 563890 at *2 (Tenn. Ct. App. E.S., filed Oct. 1, 1996) ("the statute makes no exceptions as to any third party. Under the statute, it is clear that the adult son living with appellee is a third party as contemplated by the statute"); *Broersma v. Broersma*, No. 85-290-II, 1986 WL 4848 at *2 (Tenn. Ct. App. M.S., filed Apr. 25, 1986) (third person "is one of plaintiff's adult daughters who continued to live in her mother's home even after she reached her majority").

Wife argues that construing a newly-emancipated child as a "third person," thereby making a parent face a possible choice between supporting her child and keeping her alimony, is not in keeping with the legislative intent that "[i]t is the public policy of this state

---

[3]Tenn. Code Ann. § 36-5-121(f)(2)(B) provides:

> (B) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
>
> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
>
> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

to . . . encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state." Tenn. Code Ann. § 36-5-121(c)(1). The trial court responded to this argument as follows:

> As much as the court personally may think . . . that the third person provision was not aimed at adult children, but at "live-in" lovers and not children who are living at home and attending college, the general assembly and the appellate courts appear to disagree. The court is duty bound "to follow the law" where such is clear.

As much as we might agree with wife's argument, which is supported by reason and common sense, it must be directed to the state legislature. The statute, as currently written, provides for no exceptions to "third person." As we have consistently held, this Court cannot rewrite the statute by carving out an exception for children who have recently reached adulthood and continue to live at home. "Where the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, 'to say sic lex scripta ["so is the law written"] and obey it.' " *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008) (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997)).

We now address the issue of whether the trial court erred in determining that wife failed to rebut the statutory presumption that she was providing support to Ethan and therefore does not need the amount of alimony previously awarded. A finding that an alimony recipient is living with a third person does not end the inquiry of whether transitional alimony should be suspended in whole or in part. *Wright v. Quillen*, 83 S.W.3d 768, 775 (Tenn. Ct. App. 2002); *Strait,* 2006 WL 3431933 at *5. Such a finding "merely shifts the evidentiary burden in a modification proceeding" to the alimony recipient. *Evans,* 2004 WL 1882586 at *4. "Once the presumption arises, the alimony recipient bears the burden of demonstrating a need for the previously awarded alimony, notwithstanding the cohabitation." *Gentry v. Gentry*, No. M2007-00876-COA-R3-CV, 2008 WL 275881 at *4 (Tenn. Ct. App. M.S., filed Jan. 31, 2008) (citing *Azbill*, 661 S.W.2d at 686).

In order to determine whether the presumption is rebutted, a court must examine the financial circumstances of the alimony recipient at the time of the modification hearing, to see whether the recipient has demonstrated a continuing need for the previously awarded amount of alimony. Tennessee courts have frequently held that an alimony recipient has rebutted the presumption by demonstrating continuing need, despite living with a third person and either receiving support from, or providing support to, the third person. *See Keith v. Keith*, No. E2009-02201-COA-R3-CV, 2010 WL 1221425 at *5 (Tenn. Ct. App. E.S.,

filed Mar. 30, 2010); ***Audiffred***, 2009 WL 4573417 at *4; ***Edwards***, 2005 WL 2043580 at *3; ***Malone v. Malone***, No. E2002-01257-COA-R3-CV, 2003 WL 2002355 at *2-3 (Tenn. Ct. App. E.S., filed May 1, 2003); ***Benning***, 1999 WL 51877 at *2; ***Russell v. Russell***, No. 88-332-II, 1989 WL 19837 at *4-5 (Tenn. Ct. App. M.S., filed Mar. 10, 1989); ***Bullers v. Bullers***, No. 129, 1987 WL 10682 at *1 (Tenn. Ct. App. E.S., filed May 13, 1987); ***Broersma***, 1986 WL 4848 at *2.

In the present case, husband stopped providing any financial support to his children as soon as they turned eighteen. He acted within his right in doing so. He removed Ethan from his health insurance, prompting wife to pick up the added expense of putting Ethan on her health insurance. Wife has continued living in the marital residence because at the time of trial it had not yet been sold. Although husband argues that wife "got a new job" after the divorce, it is clear from the trial court's final divorce order that she started her job before the order and that the trial court was aware of her employment circumstances when it made the initial alimony award. The court's order, entered May 18, 2011, stated as follows:

> At the hearing, [wife] testified that she had been hired as a dental assistant by Doug Torrance, DDS. Her employment was to begin on May 5, 2011. Dr. Torrance works four days a week and travels or takes off additional time. [Wife] will be paid $17.00 per hour worked. At best, her work week will be four days or 32 hours per week. She testified she will receive no health insurance or other benefits.

Wife has continued to work part-time at a rate of $17 per hour. There was no proof that wife had any new or other source of income since the divorce. Wife filed a statement of income and expenses that shows her monthly net income of $2,553.83 and expenses of $3,005.55, a deficit of $451.72. Her listed expenses appear reasonable and reflect a frugal lifestyle. It appears from the evidence presented that the only significant changes in wife's financial situation since the final divorce judgment are that she stopped receiving child support of $507 per month from husband when Ethan turned eighteen, and wife's additional health insurance expense from adding Ethan.

As part of the division of the marital estate, each party received approximately $105,000 in cash. Wife testified that the only way she has been able to make ends meet is to use this savings, and it was down to approximately $70,000 at the time of trial. Wife has admitted that she "helps both of [her] children when I can financially afford to do so" while they are trying to get a college education. We do not believe it is fair for her to be penalized for doing so, nor does the alimony statute require such a result. Wife's economic situation is on a downward spiral unrelated to her help for her children. Under the circumstances, we

hold that wife has rebutted the statutory presumption and demonstrated her continuing need for the amount of transitional alimony initially awarded by the trial court. The trial court's judgment reducing wife's transitional alimony is reversed.

Lastly, we address wife's request for attorney's fees. The trial court held as follows on this issue:

> If the court had denied any relief to [husband], the court would have granted [wife's] attorney's fee request. Ms. Paty [wife's attorney] did have to perform many extra tasks due to [husband's] self-represented status. However, in this case, [wife's] request cannot be granted as she did not prevail in the main issue, the requested reduction in the alimony.

Similarly, the trial court denied wife's request for discretionary costs below, stating that "[u]nfortunately, the court cannot grant recovery on [allowable discretionary costs] because [wife] was not the 'prevailing party.' [Husband] was the prevailing party as he was successful in reducing his current alimony payment in half." In light of our disposition of the issues on appeal in wife's favor, we hold that wife is entitled to an award of her attorney's fees for professional services rendered and expenses at the trial court level and discretionary costs. We decline to award her fees and expenses for appellate work because her "statement of the issues presented for review" does not include the issue of entitlement to fees and expenses for appellate work. Consequently, that issue is waived. *See* **Hodge v. Craig**, 382 S.W.3d 325, 335 (Tenn. 2012) (". . . an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)"). On remand, the trial court is directed to determine and award wife her fees and expenses at the trial court level and her discretionary costs.

V.

The judgment of the trial court is reversed. Costs on appeal are assessed to the appellee, Bobby Spencer Hickman. The case is remanded to the trial court for further proceedings consistent with this opinion and applicable law.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE

-12-