# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 13, 2011 Session

## MARSHA BORDES v. JULIAN BORDES

**Appeal from the Circuit Court for Williamson County**
**No. II99106     Robbie T. Beal, Judge**

---

**No. M2010-02036-COA-R3-CV - Filed September 30, 2011**

---

Husband filed a petition to modify the amount of alimony *in futuro* set in the divorce decree, asserting that health problems and a decrease in his income arising after the divorce constituted a substantial and material change in circumstances that warranted a reduction in the amount of alimony. Husband appeals the denial of the petition and award of attorney fees to Wife. Finding that Husband was entitled to modification and that the award of attorney fees was inappropriate, we reverse the judgment of the trial court and modify the award of alimony.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

J. Todd Faulkner, Nashville, Tennessee, for the appellant, Julian Bordes.

Angela R. Hoover, Franklin, Tennessee, for the appellee, Marsha Bordes.

## OPINION

### I. Procedural History

Marsha Bordes ("Wife") and Julian Bordes ("Husband") were divorced on June 29, 1999; at the time of the divorce, they had two minor children. The Final Decree of Divorce incorporated a Marital Dissolution Agreement ("MDA") which granted Wife custody of the children and required Husband to pay support in accordance with the Child Support Guidelines. The MDA also provided that Husband would pay alimony *in futuro* as follows: $1,700 per month until child support for the parties' oldest child ended; at that time, the

1

alimony payment would increase to $2,300 and continue until child support for the parties' youngest child ended; alimony would then reduce to $2,000 per month. The MDA contained no provision for modification of the nature or amount of alimony.

On January 11, 2008, Husband filed a Petition to Modify Final Decree to Decrease Alimony Payment; Wife duly answered the petition and filed a counter-petition.[1] At the time of filing the petition to modify, Husband's child support obligations had ended and he was paying alimony of $2,000 per month. At the hearing on the petition on July 15, 2010, Husband testified that he owned an Orkin pest control franchise at the time of the divorce and that he had experienced health problems since the divorce—including heart surgery and diabetes—which limited his ability to work. As a consequence, he sold the Orkin franchise in 2009 and he and his current spouse purchased a restaurant; he further testified that he received $400 every two weeks from the restaurant and $1,100 per month from a retirement account. Husband contended that his health problems and the decrease in his income constituted a substantial and material change in circumstances that warranted a reduction in the amount of alimony.

On September 1, the court entered an order in which it held that the "economic downturn in the economy" was a substantial and material change, and that Husband had "some health issues and that his age was beginning to limit his ability to do his job" but that these matters were "not necessarily unanticipated" at the time the parties executed the MDA. The court also held that Husband made a "significant amount of money which would have paid his alimony obligation for a significant amount of time" when he sold the franchise and that Husband's choice to invest the proceeds of sale in the restaurant, from which he only received $800 in income per month, did not justify "penalizing" Wife by lowering the amount of alimony. The court denied the petition to modify and awarded Wife attorney fees in the amount of $7,500.

Husband appeals and asserts that the trial court erred in failing to modify and reduce his alimony obligation; he also contends that the trial court erred in awarding attorney fees to Wife.

---

[1] The court's ruling on the counter-petition is not at issue on appeal.

2

## II. Analysis

*A. Standard of Review*

Alimony *in futuro* is intended to provide support on a long-term basis until the death or remarriage of the recipient. Tenn. Code Ann. § 36-5-121(f)(1).[2] An award of alimony *in futuro* remains in the court's control for the duration of such award, and "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

A party seeking a modification of alimony *in futuro* must satisfy two requirements. First, the petitioner must establish that there has been a change in circumstances that is substantial and material since the entry of the original support decree. *Bogan*, 60 S.W.3d at 727–28 (citing Tenn. Code Ann. § 36-5-101(a)(1)). Second, the person seeking modification must establish that modification is warranted. *See Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005) (citing *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003)).

A trial court's decision regarding modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "[T]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Gonsewski v. Gonsewski*, M2009-00894-SC-R11CV, 2011 WL 4116654 at *3 (Tenn. Sept. 16, 2011) (citing *Broadbent v. Broadbent*, 211 W.W.3d 216, 220 (Tenn. 2006). We review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, when the trial court has set forth its factual findings in the record, we will presume the correctness of those findings unless the evidence preponderates against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Appellate courts decline to second-guess a trial court's decision to modify support absent an abuse of discretion. *Robertson v. Robertson*, 76 S.W.3d 337, 343 (Tenn. 2002)).

---

[2] Alimony *in futuro* may be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible," and is appropriate when:

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36-5-121(f)(1).

An abuse of discretion "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," *Gonsewski,* 2011 WL 4116654 at *3, and occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

### B. Modification of Alimony in Futuro

In this case, neither party contests the court's finding of a substantial and material change of circumstance; that finding allowed the court to consider whether a modification was warranted. With regard to its finding, the court held:

> That the Court can find as a material and substantial change of circumstance the economy. Petitioner is in a business that drives the economy. The Court can certainly take note that there has been a downturn in the economy, and that would substantially affect his income-earning ability. There has been a material and substantial change in circumstances, at least on that basis, to believe that the Court can review this.

The trial court determined that the "economic downturn" constituted a substantial and material change; the court did not make factual findings in support of this determination. We have reviewed the record and do not find evidence in support of the court's determination.[3] However, mindful of our ability to consider issues not presented for review, *see* Tenn. R. App. P. 13(a), and to affirm the trial court's determination on different grounds, *see Continental Cas. Co. v. Smith*, 720 S.W.2d 48 (Tenn. 1986), we conclude that the record does show a substantial and material change in circumstance, which allowed Husband to proceed to show that a modification was warranted.

A change in circumstances is "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728 (citing *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991)). Husband's Social Security Administration earnings record was introduced into evidence and showed that, when the parties were divorced in 1999, Husband earned $121,823; during the years following, Husband's earnings decreased from $120,950 in 2000 to $9,000 in 2007. With respect to his business interests and other income, records of Husband's accountant showed: in 2007

---

[3] Husband did testify that "the economy went down." However, this testimony was in the context of his operation of the pest control franchise and not the restaurant.

Husband received $277 in interest income and $8,179 as his share of profits from the Orkin franchise in addition to the $9,000 earnings income; in 2008, $9,000 in earnings from the pest control business, $1,605 in gambling income, $177 in interest income, and a loss of $20,438 from his ownership interest in the franchise; in 2009, $6,200 in earnings from the restaurant, $1,875 in earnings from the pest control business, $1,200 in gambling income, a one-time gain of $109,045 on the sale of the Orkin franchise, a $4,691 loss on the final year of operation of the pest control business, and $62,761 loss on the first year operation of the restaurant; and from January through May of 2010, $4,400 in salary received and $5,418 as his share of profits from the restaurant.[4] Husband testified that the restaurant was "breaking even" and that he was receiving $800 in salary each month from the restaurant. Husband also testified that he was receiving $1,100 each month from a retirement plan.

The evidence shows that Husband's income dropped dramatically from the time of the divorce to the time of the hearing on the petition for modification. His earnings consistently decreased over the period and the gain from the sale of the Orkin franchise was invested into a new business enterprise which was just "breaking even."[5] From 2003 through 2008, Husband's alimony obligation exceeded his income from all sources. Husband testified that he was only able to make alimony payments because his spouse paid for "every bit of [the household expenses]." The decrease in Husband's income constituted a substantial change of circumstance because it impaired Husband's ability to pay the amount of alimony set at the time of the divorce. *Bogan*, 60 S .W.3d at 728.

A change in circumstances is "material" when the change occurs since the date the alimony was ordered, and the change was not within the contemplation of the parties when they entered into the property settlement. *Bogan*, 60 S.W.3d at 728 (citing *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)). The evidence in this case shows that the decrease in Husband's income was a consequence of his health problems, arising after the divorce, which led to his inability to continue in the pest control business and the resulting sale of the Orkin franchise. Although the trial court held that these problems were "not necessarily unanticipated," the record does not show that the severity of the problems and the effect that they would have on Husband's income was anticipated.[6] Accordingly,

---

[4] The accountant reported that, in 2010, Husband would also receive the final installment payment from the sale of the Orkin franchise, totaling $10,874.

[5] We have taken the proceeds of sale of the Orkin franchise into account in our discussion of Husband's earning capacity, *infra.*

[6] Husband testified that, at the time of the divorce, he was taking medication for high blood pressure; since the divorce, he had a stent put in his heart, was diagnosed as "diabetic 2," and had numbness in his feet
(continued...)

5

Husband's health problems and his resulting decrease in income are material because they were not within the contemplation of the parties at the time of the divorce.

Having affirmed the court's finding of a substantial and material change in circumstances, we next consider whether the trial court abused its discretion in denying a modification. Husband contends that the court erred in denying the modification because he "has experienced an unanticipated loss of earning ability and the Wife is capable of supplementing her income."

Whether modification is justified is based upon the same factors employed in the consideration of an initial award of alimony; the factors are set forth at Tenn. Code Ann. § 36-5-121(i).[7] *Bogan*, 60 S.W.3d at 730; *Wright v. Quillen*, 83 S.W.3d 768, 773 (Tenn. Ct.

---

[6](...continued)
and legs. The accountant's records reported that Husband hired a service manager to run the Orkin franchise in 2008; Husband testified that his health problems forced him to hire this manager.

[7] The factors are:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)

(continued...)

App. 2002); *Threadgill v. Threadgill*, 740 S.W.2d 419, 422–23 (Tenn. Ct. App. 1987); *Hasty v. Hasty*, No. M2002-01756-COA-R3-CV, 2003 WL 21954190, at *2–3 (Tenn. Ct. App. Aug. 15, 2003). Although the court must consider all factors under the statute, the two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide the support and the financial need of the party receiving the support. *Bogan*, 60 S.W.3d at 730. While the need of the receiving spouse is the most important factor in addressing an initial award of support, when deciding whether to modify an award, the need of the receiving spouse and the ability of the obligor to provide support must be given at least equal consideration. *Id.*

With regard to Husband's ability to pay, the trial court determined that Husband's earning capacity was between $75,000 to $100,000 per year. In calculating Husband's earning capacity, the court stated:

> That if the Court looks at Petitioner's earning potential back to 1990 and averages it out, even the years that he made Ten Thousand ($10,000.00) Dollars or so, it averages out to be Eighty Thousand and 00/100 ($80,000.00) Dollars per year. This Court has to consider earning potential and Petitioner has earning potential of significantly more than his current income of Eight Hundred and 00/100) Dollars per month. The Court finds that Petitioner is an experienced business owner who has real life experiences that would suggest that he is capable of making a very good living. Petitioner had significant income over a significant period of time, even with the economy downturns and Petitioner choosing to embark on a new career, it is expected that Petitioner would continue to be able to make a very good living.

While we agree that Husband's earning capacity is greater than what he is currently earning, we are unable to agree that the range found by the court is Husband's earning capacity.

"Determining . . . what a [parties'] potential income would be [is] a question[] of fact that require[s] careful consideration of all the attendant circumstances." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). In establishing this range, the court relied primarily on evidence of Husband's earnings history, including time prior to the divorce and time when Husband was not suffering health problems which adversely affected his ability to earn income. Taking pre-divorce earnings into account is proper and consistent with the court's responsibility under Tenn. Code Ann. § 36-5-121(i) in determining an initial award of alimony. When the inquiry before the court is whether the award should be

---

[7](...continued)

modified as provided in Tenn. Code Ann. § 36-5-121(f)(2)(A), however, post-divorce earnings and other attendant circumstances are more probative of earning capacity.

The record shows that Husband currently receives $1,900 per month in income from the restaurant and his retirement plan, which are his only sources of income. Proof of the statutory factors includes evidence that Husband was 58 years old at the time of the hearing; that he has Type II diabetes, asthma, and a stent in his heart; and that his only other assets are a 2004 Ford F-150 truck and his home, in which he has approximately $100,000 in equity. An expense statement was introduced by Husband showing his monthly expenses at $2,498.00.

During the period 1999-2010, Husband was the owner of the Orkin franchise and his income—both from earnings and his ownership interest in the business—was derived from that source; Husband's earnings, as reflected in the Social Security Administration earnings record and the record from his accountant, averaged approximately $50,000. Husband testified that in the years after the divorce he became no longer physically able to perform the tasks that the pest control job required and, as a consequence, sold the business.

The Orkin business was the property of a limited liability company composed of Husband and his present spouse and sold for $409,137.70. Husband and his present spouse formed a new LLC and, from the proceeds of sale of the Orkin franchise, paid $250,000 in cash as a down payment on the restaurant.[8] $110,000 of the proceeds was used to pay debt encumbering the franchise and the remainder was allocated to working capital for the restaurant. The franchise sale agreement also provided that $48,846.70 of the purchase price was financed by Husband, to be paid in 18 monthly installments of $2,640.00 beginning April 2009. The sale of the Orkin franchise produced income to Husband during a portion of the ten year period at issue; this could properly be considered as evidence of Husband's ability to pay in accord with Tenn. Code Ann. § 36-5-121(i)(1) and it is appropriate to consider this amount in the determination of earning capacity. Dividing this amount by the ten years between the divorce and the sale of the franchise results in a figure of $25,000 per year.

In considering all the evidence bearing on Husband's earning capacity, we find that Husband's earning capacity is $75,000 per year. In addition to the earnings and business income and proof of statutory factors recited above, Husband has 44 years of work experience and has operated two businesses; his qualifications make it possible for him to pursue employment elsewhere if the restaurant does not succeed.

---

[8] $250,000 of the purchase price of the restaurant was financed.

With respect to her need for support, Wife testified that she was not working at the time of the hearing and that the alimony payments were her only source of income. She submitted an affidavit attesting that her expenses were $2,438 per month and testified that she had a 401(k) account containing approximately $100,000, and a home in which she had approximately $130,000 in equity. Wife also testified that she is 58 years old, has scoliosis and is deaf in one ear and that she had difficulty lifting boxes and staying on her feet. Wife was a homemaker during the parties' marriage from 1975 to 1999 and has had limited work experience since the divorce. In 2000, she worked for three months as a receptionist at a veterinary clinic, earning $9.00 an hour. From November 2005 to November 2007, she worked part-time at Bath & Body Works as a cashier and salesperson, earning $7.50 an hour, with her salary rising to $8.00 an hour.

The trial court found that Wife was underemployed and could earn approximately $20,000 per year. The record supports the court's finding that Wife is capable of working and is underemployed. While her health and physical condition may limit the type of work she is capable of performing, she did not testify that she is disabled from working, and she has not shown that she could not find employment that would accommodate her medical conditions.

We do not find support in the record, however, for the court's finding that Wife's earning capacity is $20,000. In this regard, the court stated that "[Wife] is unemployed but should be earning money and could be earning approximately Twenty Thousand and 00/100 ($2,000.00) Dollars per year." The court did not make findings or otherwise refer to evidence. The best evidence in the record of Wife's earning capacity was her testimony that when she was employed at Bath & Body Works she earned $8.00 an hour. This evidence supports a finding that, based on a year of full-time employment at $8.00 an hour, Wife's earning capacity is $16,640 per year.[9] This income would not, however, cover Wife's yearly expenses as set forth in her affidavit, and she would still have a financial need of $12,616 per year or $1,050.00 per month.

As noted previously, the two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support and these considerations stand on equal footing. *Bogan*, 60 S.W.3d at 730. The evidence supports a finding that, based on

---

[9] In addition, Wife testified that she maintained the retirement account which she had been awarded in the divorce and that the account had a balance of approximately $100,000.00. There was no proof of whether the funds were immediately available to her and, if so, any conditions attendant to her drawing on this account.

9

Husband's earning capacity of $75,000 per year, he has the ability to pay alimony; the record also shows that Wife's need is $950 per month less than the amount Husband is currently paying. The decision to deny modification of the award of alimony is not supported by the preponderance of the evidence, and Husband's alimony payment should have been modified in accordance with Tenn. Code Ann. § 36-5-121(f)(2)(A).

### C. Attorney Fees

Husband asserts that the trial court erred in awarding Wife attorney fees incurred in defending his petition for modification. The trial court awarded attorney fees based on the ruling that Wife prevailed on the petition for modification. Because we reverse the court's denial of the petition, we also reverse the trial court's decision to award attorney fees.

## III. Conclusion

For the foregoing reasons, the judgment of the trial court dismissing the petition and awarding counsel fees to Wife is reversed; the case is remanded to the trial court with instructions to enter an order modifying the amount of alimony to $1,050.00 per month.

_____
RICHARD H. DINKINS, JUDGE

10