# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 6, 2011 Session

## THOMAS JAMES MILAM, JR. v. DONNA LISA VINSON MILAM

**Appeal from the Chancery Court for Williamson County**
**No. 38230     Robbie T. Beal, Chancellor**

---

**No. M2011-00715-COA-R3-CV - Filed May 17, 2012**

---

This appeal involves a post-divorce petition to modify child support. The trial court reduced Father's child support obligation from $4,500 monthly to $2,500. Mother appeals. Finding that the trial court erred in the calculation of Father's income and the number of days of his parenting time, we vacate the child support award and remand for a redetermination of the appropriate award under the Child Support Guidelines.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Russ Heldman, Franklin, Tennessee, for the Appellant, Donna Lisa Vinson Milam.

Helen Sfikas Rogers and Lawrence James Kamm, Nashville, Tennessee, for the Appellee, Thomas James Milam, Jr.

## OPINION

### I. Facts and Procedural History

Donna Lisa Vinson Milam ("Mother") and Thomas James Milam, Jr. ("Father") were divorced on August 13, 1997. In the Final Decree of Divorce, Mother was named primary residential parent of the parties' two children, and Father was ordered to pay $4,500 per month in child support; Father was also ordered to pay $2,500 per month in rehabilitative alimony for a period of forty-eight months. In 2000, Father filed a petition to modify the child support, which the trial court denied. This Court, in *Milam v. Milam*, No. M2001-

00498-COA-R3-CV, 2002 WL 662026 (Tenn. Ct. App. Apr. 23, 2002), affirmed the denial of the petition to modify.

The issues presently before the Court arose from Father's June 22, 2010 Petition for Modification of Child Support and for Criminal Contempt. In his petition, Father alleged that his "gross monthly income has decreased in 2010 as a result of a pay off agreement concerning his place of employment." Father requested that his child support obligation be reduced to $2,182 per month and alleged that Mother was "in clear and open contempt" of the court's order due to her failure to return the children in a timely fashion on May 9, 2010. On July 9, Mother filed a motion to dismiss, which the trial court denied. From August 2010 until the final hearing, Mother and Father filed various motions related to discovery, including a motion for Protective Order, which was granted by the trial court.

The court held a hearing on November 19, 2010. On December 23, 2010, while the matter was under advisement, Father's attorney sent a letter and an affidavit of Father to the trial judge notifying the court that Father had obtained employment since the final hearing and provided Father's anticipated salary. Mother's attorney was also sent a copy of the letter and affidavit.

On January 20, 2011, the trial court ruled that Father's child support should be reduced, pursuant to the child support guidelines, to $1,980; however, the court found there should be an upward deviation of $520 making Father's obligation $2,500 per month. The court made the reduction in child support retroactive to the date Father filed the petition which resulted in a judgment of $16,000 against Mother. The court held Mother in contempt for her failure to return the children appropriately on May 9, 2010 but did not sanction Mother. Finally, the court declined to award attorneys' fees to either party, and denied Mother's objection to post-trial filings and her request for sanctions. Mother appeals.

## II. Standard of Review

We review a trial court's findings of fact *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Thus, when the trial court has set forth its factual findings in the record, we will presume the correctness of those findings unless the evidence preponderates against them. *Bordes v. Bordes*, 358 S.W.3d 623, 627 (Tenn. Ct. App. 2011) (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. *Lacey v. Lacey*, No. W2002-02813-COA-R3-CV, 2003 WL 23206069, at *2 (Tenn. Ct. App. Oct. 31, 2009) (citing *Huntley v. Huntley*, 61 S.W.3d 329, 334 (Tenn. Ct. App. 2001)).

## III. Analysis

Mother's paramount issue on appeal relates to the decrease in Father's child support obligation from $4,500 per month to $2,500. Mother asserts that the trial court erred in making its calculation of the amount of child support by erroneously calculating the parties' income and number of days of parenting time, and by failing to apply the "Hardship Provision" to deny Father any reduction in his obligation. Mother raises additional issues related to discovery matters and attorney's fees.[1]

### A. Modification of Child Support

The modification of child support is governed by Tenn. Code Ann. § 36-5-101(g). In considering a petition to modify child support, the trial court must determine whether a "significant variance" exists between the Child Support Guidelines ("the Guidelines") and the amount of support currently owed. Tenn. Code Ann. § 36-5-101(g). *See Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006). For child support orders that were established before January 18, 2005,[2] as in the instant case, the Guidelines define a "significant variance" as: "[a]t least a fifteen percent (15%) change in the gross income of the [alternate residential parent]." Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(b)(1). The parent seeking modification of child support has the burden to prove a significant variance exists. *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007).

The trial court found that Father's income had decreased significantly from approximately $700,000 per year when the Final Decree of Divorce was entered in 1997, to an average of approximately $350,000 per year over the three years preceding the hearing. The court held that this decrease in income constituted a "significant variance" warranting a modification in Father's child support obligation. We affirm the trial court's finding that this change in income constituted a "significant variance" under the Guidelines. We now

---

[1] Mother also asserts that the trial court erred in accepting an *ex parte* communication from Father. The alleged *ex parte* communication was a letter and affidavit Father's counsel sent to the court and to Mother's attorney after the case was taken under advisement. Because this communication was disclosed to Mother and she had the opportunity to respond, we decline to characterize this communication as *ex parte* and find no merit in Mother's argument. *See Castle v. State Dept. of Corr.*, No. E2005-00874-COA-R3-CV, 2005 WL 2372762, at *3 (Tenn. Ct. App. Sept. 27, 2005) (citing *Moore v. Moore*, No. 01-A-01-9210-CH00-389, WL 1993 54593, at *5 (Tenn. Ct. App. May 3, 1993)).

[2] When the Final Decree of Divorce was entered in this case, the parties' child support obligations were determined under the Flat Percentage Guidelines. Since January, 18, 2005, all modifications and awards of support are calculated under the Income Shares Model promulgated by the Tennessee Department of Human Services Child Support Services Division. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(1).

proceed to examine whether the trial court erred in establishing the amount of Father's child support obligation, as argued by Mother.

Mother first contends that the trial court erred by imputing income to her without specifically finding that she was willfully and/or voluntarily underemployed. Father contends that Mother's argument "rests upon a technicality" because the clear meaning of the trial court's order was that Mother was voluntarily underemployed even though the trial court did not expressly hold as such. Second, Mother asserts that the trial court erred in failing to consider all sources of Father's income and miscalculated the amount Father's parenting time and his contribution to the children's medical insurance premiums.

### 1. Calculation of Mother's Income

With respect to Mother's employment status and earnings, the trial court found that Mother is a registered nurse and worked approximately thirty hours per week at NHC Place in Cool Springs. The court found that her income increased from "no annual earnings" at the time of the divorce to earnings in the amount of "close to $35,000.00 per year." The court held that "Mother is earning less than she is capable," and that she has the ability to earn $50,000.00 per year.

Determining whether a parent is voluntarily underemployed is a fact driven inquiry requiring careful consideration of all the attendant circumstances. *See Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). Accordingly, we review the trial court's determination in accordance with Tenn. R. App. P. 13(d), presuming the correctness of the trial court's factual findings unless the evidence preponderates otherwise. *Id.*

The integrity of a child support award is dependent upon the trial court's accurate determination of both parents' gross income. Pursuant to the Guidelines, a court may impute gross income in the following situations:

(I) If a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed; or

(II) When there is no reliable evidence of income; or

(III) When the parent owns substantial non-income producing assets, the court may impute income based upon a reasonable rate of return upon the assets.

Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i). The attribution of income to a party is based on the premise that "parents may not avoid their financial responsibility to their

children by unreasonably failing to exercise their earning capacity." *Massey v. Casals*, No. W2008-01807-COA-R3-JV, 2009 WL 4017256, at *6 (Tenn. Ct. App. Nov. 23, 2009).

The Guidelines do not presume that a parent is willfully underemployed; rather, courts are directed to "ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii). The party alleging that a parent is willfully or voluntarily underemployed carries the burden of proving underemployment. *Armbrister v. Armbrister*, No. E2010-01561-COA-R3CV, 2011 WL 5830466, at *5 (Tenn. Ct. App. Nov. 21, 2011). "A determination of willful and voluntary . . . underemployment is not limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that affects a parent's income." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I). Thus, courts should allocate additional income to an underemployed parent to increase the parent's gross income to an amount that reflects the parent's income potential or earning capacity based upon his or her educational level and previous work experience. *See Diley*, 2011 WL 2015395, at *7–8; *see also* Tenn. Comp. R. & Regs. 1240–2-4-.02(3)(a)(2)(ii)(II).

As an initial matter, we address Mother's contention that the trial court lacked authority to allocate additional income to her without making an express finding that she was voluntarily underemployed. We acknowledge that the court did not expressly state Mother was voluntarily underemployed; however, we discern from the court's imputation of income to Mother and its finding that Mother was "earning less than she is capable" that the trial court found Mother to be underemployed. Moreover, the trial court's use of the phrase "earning less than she is capable" mirrors the language used in Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(II), which instructs a court to impute additional income to a voluntarily underemployed parent to reflect their "earning capacity." This contention is without merit.

We next examine whether the court erred in imputing income to Mother. Mother testified that she makes $25 per hour and works "about 30 hours a week." When asked whether she had ever considered working additional hours doing "PRN" work which pays more per hour than her present job, Mother stated that she tried to "avoid" that type of work because the hours were not as flexible as her current position. Mother also testified that, in 2008 and 2009, she worked more than 30 hours per week at Vanderbilt Hospital and made more money than in the position she held at time of trial. The court held that Mother is "capable of working a forty (40) hour week and making ($50,000.00) per year." Based on our review of the record, we find that the evidence does not preponderate against the trial court's conclusion that Mother was capable of working more than 30 hours per week and that

her income potential, based upon her educational level and previous work experience, is $50,000.00 per year. We affirm the trial court's allocation of income to Mother.

### 2. Calculation of Father's Income, Parenting Time, and Medical Insurance Payment

#### a. Father's Income

With regard to Father's income, the court found as follows:

> Mr. Milam has suffered a job loss which significantly cut his income to its present amount in 2010 to Two Hundred Eighty-One Thousand Dollars ($281,000.00). Mr. Milam is reaching retirement age and has had issues with his health. The state of the United States' economy is not such that would allow Mr. Milam to easily find a job in the realm of his past earnings.
>
> However, the Court also must consider Mr. Milam's earning potential. His experience level is significant and he possesses specific and particular skills that are desirable in his industry. Further, his past earnings must be taken into account as representational of his overall ability to earn.
>
> For child support calculation purposes, the Court finds that during the scope of the year 2010, Mr. Milam has actively searched for employment and his income is properly calculated at the amount of his severance pay of . . . ($281,000.00). However, the Court finds that said amount of . . . ($281,000.00) is the absolute minimum that Mr. Milam should be expected to earn throughout the duration of his employable years.

The trial court ultimately held that Father had the ability to earn $23,416.66 per month in gross income and used that amount in its calculation of Father's child support obligation.

Mother contends that, by failing to consider sources of income other than severance pay from his previous employer, the trial court erroneously calculated Father's gross monthly income. In support, Mother cites Father's testimony regarding income he received from employment as a part-time lobbyist.

The trial court did not specify how it determined Father's 2010 income to be $281,000.00. Evidence of Father's 2010 income in the record includes a series of pay stubs from American Health Fulfillment Inc., a report of Thomas Price, an accountant, and Father's testimony regarding his lobbying activities. The pay stubs show that Father was paid $11,535.46 bi-monthly in severance pay and that, in 2010, he received $7,453.60 as

remuneration for unused vacation days;[3] thus, at the time of the hearing, Father was set to receive $284,304.64 in severance payments in 2010.[4] Father testified that, in addition to severance pay, he had been paid $14,000 in 2010 for part-time lobbying activities and was expecting another payment of $14,000 for this work "depend[ing] on when they collect from these various companies." The evidence thus shows that Father's 2010 income was at least $298,304.64 or $24,858.67 per month.[5]

The definition of "gross income," for the purpose of determining a party's child support obligation is found under Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(1) which includes, in relevant part, ". . . all income from any source . . ., whether earned or unearned, and includes, but is not limited to the following: (i) Wages; (ii) Salaries; . . . (iv) Income from self-employment . . . (vii) Severance pay . . . ." The trial court failed to consider all sources of Father's income for purposes of setting his child support, thus the evidence preponderates against the trial court's finding that Father's income "is properly calculated at the amount of his severance pay of . . . ($281,000.00)."[6]

### b. Parenting Time

In the child support worksheet attached to the court's order, the court assigned 162.5 days of parenting time to Father and 202.5 days of parenting time to Mother. Mother contends that the number of days of parenting time assigned to Father is inaccurate, and consequently, his child support obligation is incorrectly calculated.

Father attached a child support worksheet as an exhibit to his Petition for Modification of Child Support and for Criminal Contempt in which he listed the number of days of his

---

[3] Father testified that he received the pay for his unused vacation in March of 2010.

[4] $11,535.46 x 24 = $276,851.04. $276,851.04 + $7,453.60 = $284,304.64.

[5] As noted by Mother, this amount does not include interest income, rental income or IRA distributions, which are sources of income Father previously identified on his 2008 tax return. *See* Tenn. Comp. R. & Reg. 1240-2-4-.04(3)(a)(1) (listing interest income and Individual Retirement Accounts as sources of income).

[6] Mother asserts that the trial court erred in admitting inadmissible hearsay into evidence. Specifically, Mother contends that Father's testimony regarding what he thought his salary would be in the current job market constituted inadmissible hearsay. We have reviewed the testimony Mother complains of and find the testimony was admissible in accordance with Tenn. R. Evid. 701 as an opinion of a lay witness. Pursuant to Tenn. R. Evid. 701, "[a] witness may testify to the value of the witness's own property or services." Father was testifying regarding his opinion of the value of his own services, thus the trial court did not err in allowing the testimony.

parenting time at 120 days per year. At trial, Father proffered proposed child support worksheets, which were made exhibits to his testimony, in which Father's counsel listed the number of days of his parenting time at 162.5 days per year. On cross-examination, Mother's counsel asked about the discrepancy between his original child support worksheet and the worksheet proffered at trial, and Father testified as follows:

Q: All right. Now, I want to hand you this. When [you] filed your petition, this is what was attached, was it not?

A: (Witness reviewing document.) Yes. That was a child support worksheet. Yes.

Q: And that child support worksheet contains the calculation of 120 days that you exercise; correct?

A: Correct.

Q: All right. And when you filed that petition, you were telling the Court that you want the Court to set your child support based upon 120 days to you and the rest to mother; correct?

A: Correct.

. . .

Q: So that was your position at that time about how many days that you have with the children based upon the two orders of the Court; correct?

A: Correct.

Q: Then you've never submitted another child support worksheet with any other number on it until today, where now you're saying 162.5; correct?

A: I did see the document and saw it said that. I did not see that document until today, and I don't know where the 160-whatever came from.

. . .

Q: So from your standpoint, it's always been your position it's 120 days today?

A: Approximately. It is one-third, but, yes, that sounds about right to me.

Based on Father's testimony and our review of the entire record, we conclude that the evidence preponderates against the trial court's finding that Father exercised 162.5 days of parenting time with the children.

### c. Health Insurance Premiums

The trial court listed Father's insurance premium payment at $250 on the child support worksheet attached to the order modifying Father's support obligation. Mother contends that the appropriate amount of the premium payment is $164. In support of her contention, Mother points to the child support worksheet Father originally attached to his Petition to Modify, in which he stated that the insurance premium was $164 per month. At trial, Father introduced a child support worksheet as an exhibit that listed his monthly insurance premium at $250 per month. Mother fails to cite any testimony or other evidence to support her contention that the insurance premium remained $164 at the time of trial; thus we find that the evidence does not preponderate against the trial court's finding that Father paid $250 for the children's portion of health insurance premium.

In sum, we find the evidence preponderates against the trial court's calculation of Father's income and the number of days of his parenting time. Therefore we vacate the determination of Father's child support obligation and remand the case for a fresh determination of the amount of child support owed by Father.

### 3. Hardship Provision

Mother asserts that the trial court erred in failing to invoke the Hardship Provision to require Father to continue paying $4,500 per month in child support. Mother relies on Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(h), titled "Hardship Provisions Due to Modification of Order," to support her assertion, which states:

> Any time following the effective date of these Rules when a tribunal is considering modification of an order initially established under Tennessee's Flat Percentage Guidelines, and the tribunal finds a significant variance between the amount of the existing child support order and the amount of the proposed child support order calculated under this chapter, *which change results from the application of the guidelines rather than from the change in the income and/or circumstances of the parties*, then the tribunal *may* modify the current child support order up to the full amount of the variance or may apply a hardship deviation as described below in parts 2-4.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(h) (emphasis added).

The Guidelines state that the Hardship Provision is applicable only in situations where a child support order initially established under the Flat Percentage guidelines, is modified under the Income Shares guidelines and the change in the amount of child support to be paid is caused by "the application of the guidelines rather than from the change in income and/or circumstances of the parties . . . ." *Id.* The trial court found that the modification of Father's child support obligation was caused by a change in his income, not as a result of the application of the Income Shares Model of the Guidelines. Therefore, the trial court did not err in failing to apply the Hardship Provision under these circumstances.

### 4. Upward Deviation and Judgment Against Mother

Father contends that the trial court erred in finding that the facts of this case warranted an upward deviation pursuant to Tenn. Comp. R. & Regs. 1240-2-4-.07(b). The trial court found that Father's presumptive child support was $1,980.00 monthly. The court deviated from the presumptive amount by increasing child support by $520.00 per month resulting in an obligation of $2,500.00 per month. In light of our decision to remand the case for a redetermination of the amount of Father's child support obligation, we vacate the upward deviation as ordered by the court. In so doing, we leave open the question of whether an upward deviation may be appropriate when the court recalculates Father's income and days of parenting time. We likewise vacate the judgment of $16,000 granted against Mother for Father's overpayment of child support; we leave open the question of whether a judgment for overpayment will be warranted.

### B. Discovery Matters

This Court reviews a lower courts' determination of discovery matters as follows:

> Because decisions regarding pretrial discovery are inherently discretionary, they are reviewed using the "abuse of discretion" standard of review. The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524–25 (Tenn. 2010).

On September 17, 2010, the court entered an order on Father's motion for a protective order in which the court, *inter alia*, designated documentary information produced in response to discovery as confidential; restricted use of the information to purposes of the

current litigation; restricted the disclosure of the information; and ordered that the information produced be destroyed within 90 days of the termination of the proceeding. Mother contends that there was insufficient cause shown for the issuance of the order, asserting that the order was entered on the basis of hearsay statements of Father's counsel.

We do not deem it necessary to resolve this issue in light of our disposition of this appeal. The case will be returned to the court for further consideration, presumably utilizing the material which is the subject of the protective order. The trial court retains the discretionary authority to modify or lift the protective order. *Ballard v. Herzke*, 924 S.W.2d 652, 659 (Tenn. 1996). If Mother would like to modify the terms of the protective order, she is free to request relief from the court.

Mother also complains that the court erred in denying her motion to strike certain hearsay statements made by Father's counsel in support of the motion for protective order. The record reflects that, at a hearing on Father's motion for the protective order, Mother's counsel moved the court to strike certain alleged "ugly" comments made by Father's counsel; the court stated that the requested relief "was not necessary." There is no Order in the record reflecting what Mother characterizes as the court's denial of her motion to strike the statements of Father's counsel. "We do not review the court's oral statements, unless incorporated in a decree, but review the court's order and judgments for that is how a Court speaks." *Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *5 (Tenn. Ct. App. June 25, 2008) (citing *Shelby v. Shelby*, 696 S.W.2d 360, 361 (Tenn. Ct. App. 1985)). Without a written order from the court, we are unable to assign error to the trial court for the denial of Mother's motion to strike.

As a separate issue, Mother urges this Court to find that the trial court erred in refusing to dismiss Father's petition as a sanction for "Father's willful refusal to answer questions at his court ordered discovery deposition." The record shows that Mother made an oral motion to dismiss the proceeding on the morning of the hearing on the basis that Father did not answer certain questions in his deposition; the court declined to dismiss the petition as a sanction. We have reviewed the transcript of the hearing and find that the trial court was within its inherent discretionary authority when it denied Mother's motion to dismiss.

**D. Attorney's Fees**

Mother asserts that the trial court abused its discretion in failing to award attorney's fees to her. "The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). In denying Mother's motion, the court discussed at some length its determination that each party should bear their

own fees. The factors considered by the court are supported by the record; consequently, we do not find that the trial court abused its discretion in declining to award attorney's fees to Mother.

**IV. Conclusion**

For the foregoing reasons, we vacate the court's modification of child support and the judgment against Mother for $16,000. We remand the case for a redetermination of the amount of child support in accordance with the Guidelines based on Father's gross annual income of $298,304.64, Mother's imputed income of $50,000, and Father having 120 days of parenting time, subject to an upward deviation in the trial court's discretion. Costs of this appeal are assessed against the parties equally.

_____
RICHARD H. DINKINS, JUDGE