IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 20, 2021 Session

## MATTHEW KEITH ALLYN v. KATHRYN ANNE DONAHUE

**Appeal from the Circuit Court for Montgomery County
No. CC-18-CV-380 Kathryn Wall Olita, Judge**

_____

### No. M2019-02229-COA-R3-CV
_____

This case involves a petition to modify a parenting plan. Specifically, Father filed a petition to modify the parties' residential parenting schedule, arguing that a material change of circumstances had occurred. After a hearing on the matter, the trial court found that Father had failed to prove a material change of circumstances by a preponderance of the evidence as required by Tennessee Code Annotated section 36-6-101(a)(2)(C). For the reasons contained herein, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY ARMSTRONG, J., joined.

B. Nathan Hunt and Catherine W. Cheney, Clarksville, Tennessee, for the appellant, Matthew Keith Allyn.

Brandi L. Jones, Springfield, Tennessee, for the appellee, Kathryn Anne Donahue.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Matthew Keith Allyn ("Father") and Kathryn Anne Donahue ("Mother") were previously married and are the parents of three minor children. Prior to the parties' divorce, Mother left the state of Tennessee with the parties' children and relocated to New York state. Father later filed a complaint for divorce in the Circuit Court of Montgomery County, Tennessee. Mother followed with a separate custody action in New York, which was ultimately dismissed due to lack of jurisdiction.

On September 25, 2018, the parties attended mediation and entered into an agreement settling their parenting issues, which was later incorporated into the permanent parenting plan entered by the trial court. The agreed parenting plan named Mother as the primary residential parent and awarded Father thirty days of supervised visitation per year. Father's visitation was to be in New York, where the minor children reside with Mother, and supervised by Father's mother and grandmother. Notably, a portion of Section J of the parties' parenting plan states, in pertinent part,

> [t]he parties agree that Father shall undergo a psychological evaluation and an alcohol and drug assessment, and Father agrees to follow all of the recommendations of the respective professionals. Upon Father providing proof of completion of the above requirements and compliance with all recommendations thereof, then this shall constitute a material change in circumstances warranting modification of this parenting plan.

The day following the parties' entry into the settlement agreement, Father underwent an alcohol and drug assessment at Bradford Health Services in Clarksville. The results of this assessment were negative, specifically stating that, "[i]t appears that this individual does not meet clinical criteria for substance abuse treatment at this time." Father also underwent a psychological evaluation on or about October 11, 2018, where it was recommended that he attend two outpatient therapy sessions. Upon completion of these sessions, it was stated that Father would be discharged if no further issues presented themselves.[1] Ultimately, on December 7, 2018, the trial court entered the final decree of divorce and approved the permanent parenting plan.

On January 9, 2019, barely a month after the final decree of divorce had been entered, Father filed a petition to modify the visitation provisions of the parenting plan as well as his child support obligation, alleging that a material change of circumstances had occurred based on Section J of the parenting plan. Mother responded to Father's petition and also petitioned the court for criminal contempt, alleging that Father was in willful violation of two separate provisions of the parenting plan. In October of 2019, almost ten months after filing his petition, Father received an honorable discharge from the army and returned to his home state of Colorado.

A final hearing on the matter was held on November 12, 2019. Both parties, as well as members of their respective families, testified at the hearing. According to Mother's testimony, when she made the decision to leave Tennessee and return to New York, it was because she felt that it was unsafe for the parties' children to remain with Father, citing a combination of Father's anger, drinking, and misuse of guns. Mother also noted that Father had never taken care of all three of the children at the same time alone and that she had

---

[1] Later, at the hearing on the motion to modify the parties' parenting plan, Father testified that he had in fact attended these sessions and was subsequently discharged as there were no further issues.

seen him "very frustrated" and "slamming doors" while trying to care for them. Mother also testified as to her reasoning for insisting upon certain provisions being included in the parenting plan. She cited specific incidents where Father had a loaded gun within reach of the children and believed that his use of weapons was unsafe when combined with his anger and drinking. Mother's testimony was further supported by her father who also testified concerning Father's misuse of guns and mixing guns with alcohol. Father's own mother testified as to the fights between the parties, noting that she wished that Father had "more patience" and needed to work on his "controlling" nature. Finally, Father's grandmother similarly testified as to Father's "extensive heavy, heavy drinking."

During his testimony, Father discussed the burdens he allegedly faced under the current provisions of the parenting plan. Specifically, he noted the costs of traveling to New York along with his mother and grandmother for every visit. As such, he contended that the parenting plan as is was no longer feasible. However, when questioned as to what changed between the entry of the final decree of divorce and the filing of his petition for modification, Father only stated that, "[w]hat changed is I sold a lot of my tools to try to make things right." Father also claimed that he had complied with the requirements set forth in Section J of the parenting plan. In support of this, Father introduced a memorandum from Health Connect America concerning his clinical assessment. According to this memorandum, Father was "recommended, and agreed to attend, 2 Outpatient therapy sessions to process his current situation." The memorandum provides that, upon completion of these sessions, Father would be discharged if no other issues were present, and Health Connect America would thereafter provide a progress report and discharge summary. Thus, it was Father's position that he was in compliance with Section J of the parenting plan and a material change had thus occurred such that it was now appropriate to revise the plan.

Ultimately, after hearing testimony from both parties and their respective witnesses, the trial court dismissed Father's petition to modify the parenting plan, finding that a material change had not been established.[2] In its order, the trial court noted that, while Father testified that he had attended the two outpatient sessions as recommended, he did not introduce into evidence any documentation as to the progress report or discharge summary. Furthermore, Father presented no evidence at trial that established that he was in fact discharged from therapy. The trial court also took issue with Father's testimony at trial. Specifically, it found Father to be "less than forthcoming" about numerous issues during his testimony, including these outpatient sessions, and also that he had "minimized" his potential anger issues, among others. Finally, the trial court also found there to be inconsistencies in Father's testimony concerning his contention that Mother refused to provide him with information regarding the children's medical treatment, as well as the difficulty he faced exercising his visitation rights. Ultimately, the trial court found that

---

[2] In addition to finding that no material change had occurred, the trial court also dismissed Mother's petition for contempt against Father.

Father did not present sufficient proof to establish a material change by a preponderance of the evidence and, therefore, the parenting plan should not be modified.[3] Father thereafter filed a timely notice of appeal.

## ISSUES PRESENTED

Father raises a single issue for our review on appeal:

> Whether the trial court erred in finding there to be no material change of circumstances such as to warrant a modification of the parties' residential parenting schedule.

Mother, likewise, sets forth only one issue on appeal:

> Whether Mother is entitled to attorney's fees for this appeal.

## STANDARD OF REVIEW

A trial court's findings of fact are reviewed *de novo* by this Court and are accompanied by a presumption of correctness unless the preponderance of the evidence indicates otherwise. *Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005) (citing Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). A trial court's determination as to whether a material change of circumstances has occurred is a factual determination and requires "careful consideration of numerous factors." *Brunetz v. Brunetz*, 573 S.W.3d 173, 178 (Tenn. Ct. App. 2018) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997)). As such, the trial judges who have the opportunity to "observe the witnesses and make credibility determinations" are deemed to be in a better position to make these determinations than appellate judges. *Id.* (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)).

## DISCUSSION

*The Trial Court Did Not Err in Finding No Material Change of Circumstances*

The threshold issue in this case concerns whether there exists a material change of circumstances such that the parties' parenting plan should be modified. As our Supreme Court articulated in *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013),[4] Tennessee

---

[3] In its order, the trial court noted that, because it determined that a material change had not been established, it did not reach the issue of whether it was in the children's best interest to modify the parenting plan.

[4] In *Armbrister*, the Supreme Court notes that Tennessee Code Annotated section 36-6-101(a)(2)(C) abrogates any prior Tennessee decision "which may be read as requiring modification of a residential

Code Annotated section 36-6-101(a)(2)(C) governs requests for a modification of a court's prior decree pertaining to a residential parenting schedule. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister*, 414 S.W.3d at 704. In pertinent part, the statute sets forth as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C). Thus, a petitioner requesting modification of a parenting plan "must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest, and the change must have occurred **after the entry of the order sought to be modified.**" *Gentile v. Gentile*, M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (citing *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007)) (emphasis added). This Court has recognized section 36-6-101(a)(2)(C) as setting a "very low threshold for establishing a material change of circumstances." *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007) (quoting *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006)).

Father contends that the trial court erred in determining that no material change of circumstances had occurred under the requirements set forth in the parties' parenting plan. Not only does Father assert that he is in compliance with the requirements of the parties' parenting plan, but he also supports his request for modification by noting that this Court has previously recognized "a very low threshold" for establishing a material change of

---

parenting schedule to prove that the alleged change in circumstances could not reasonably have been anticipated when the initial residential parenting schedule was established." *Armbrister*, 414 S.W.3d at 704. Instead, the Court went on to state that, consistent with Tennessee Code Annotated section 36-6-101(a)(2)(C), facts or changed conditions which could have been reasonably anticipated when the initial residential parenting schedule was adopted may be sufficient to support a finding of a material change of circumstances, provided that the party seeking a modification has satisfied the preponderance of the evidence standard set forth in the statute. *Id.* (citing Tenn. Code Ann. § 36-6-101(a)(2)(C) (2010)). However, this is merely but one factor in the analysis and is not intended to be outcome determinative. *Id.* (citing *Boyer v. Heimermann*, 238 S.W.3d 249, 256 (Tenn. Ct. App. 2007)).

circumstances. However, although we recognize the relatively low burden of proof required for the modification of a residential parenting schedule, we respectfully disagree with Father's assertion that he successfully carried his burden of proof as required by Tennessee Code Annotated section 36-6-101(a)(2)(C).

In his brief, Father relies on *Rose v. Lashlee* for the contention that Tennessee courts have "consistently held that 'merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test'" for a modification of a residential parenting schedule. In support of his argument, Father points to the testimony he provided at the trial court's hearing on the matter. Specifically, he reiterates that the current parenting plan is unworkable due to the "burdens of time and financial cost" imposed on him and his family, and that it has interfered with his "ability to properly and meaningfully parent his children."

Addressing Father's argument, this Court has indeed previously held that "[e]vidence that an existing custody and visitation arrangement is not working is sufficient to support a finding of material change of circumstances." *Rushing v. Rushing*, No. W2003-01413-COA-R3-CV, 2004 WL 2439309, at *5 (Tenn. Ct. App. Oct. 27, 2004) (quoting *Turner v. Purvis*, No. M2002-00023-COA-R3-CV, 2003 WL 1826223, at *4 (Tenn. Ct. App. Apr. 9, 2003)). However, we again refer to Tennessee Code Annotated section 36-6-101(a)(2)(C), which clearly provides that "the petitioner must prove by a preponderance of the evidence a material **change** of circumstance[.]" *See* Tenn. Code Ann. § 36-6-101(a)(2)(C) (emphasis added). Thus, while we note that a parenting plan's unworkability may be sufficient to constitute a material change of circumstances, we cannot circumvent the statutory requirement that there must still be evidence that a **change** of circumstances has occurred.

In *Hartmann v. Hartmann*, No. M2018-00891-COA-R3-CV, 2019 WL 4187500 (Tenn. Ct. App. Sept. 4, 2019), the mother filed a petition to modify the parties' parenting plan based on several factors that she contended constituted a material change. While the trial court found that the mother had satisfied the requisite burden, this Court reversed, noting that only one of the changes cited by the mother had actually occurred between the final decree of divorce and the petition for modification. *Id.* at *4-5. Thereafter, we determined the sole change that had occurred after the entry of the final decree was not sufficient to warrant modification. *Id.* Similarly, in the present case, we do not find that the evidence preponderates against the trial court's finding that a material change of circumstances has not occurred. The parties' parenting plan was incorporated into the final decree of divorce, which was entered on December 7, 2018. Father thereafter filed a petition to modify said plan on January 9, 2019, barely a month after its entry. Upon review of the record and, more specifically, the transcripts of the hearing on the matter, we do not find any evidence of a material change that occurred between the entry of the final decree and Father's filing of the petition to modify. In support of this conclusion, we refer back to Father's own testimony, when, upon being asked what material change had occurred, he

testified that he had sold his tools "to make things right." However, we do not find that his arguments, nor the evidence in the record, support that a material **change** of circumstances has occurred since the entry of the final decree and the parties' parenting plan.

Furthermore, in his brief, Father notes that the current residential parenting schedule not only unduly burdens him financially, but it also interferes with his ability to exercise his rights with his children. However, considering the evidence in its entirety, we do not find that Father carried his burden in regard to his request for a modification. Initially, as alluded to above and discussed further below, Father has not pointed to any specific *changes* in the parties' circumstances since the entry of the final decree. Second, as to the proof he offered on the parties' circumstances, we note, as did the trial court, the inconsistencies found in his testimony. For example, Father testified as to the difficulties of exercising his visitation due to the distance, but then later admitted to taking a trip to Panama City Beach, Florida from Montgomery County, Tennessee after the cancellation of one of his planned visitations. Ultimately, the trial court, when confronted with Father's evidence at trial, found that it was "not able to credit Father's testimony" due to his inconsistencies and combativeness when questioned.

Accordingly, we agree with the trial court that the instances cited by Father do not amount to a material change of circumstances, and we do not find any evidence of a material **change** of circumstances in this record. Specifically, there was barely a month between the entry of the parenting plan and Father's petition, and he presents no evidence of a change in his financial situation since the parenting plan was first entered. Second, as to Father's contention that the parenting plan is "unworkable," we conclude that this is also not supported by the record. While there is undoubtedly underlying tension between the parties, "[a]crimony and hostility between the parties does not, in and of itself, amount to a material change in circumstances sufficient to permit modification or termination of visitation." *See Lovlace v. Copley*, 418 S.W.3d 1, 32 (Tenn. 2013) (citing *Rennels v. Rennels*, 257 P.3d 396, 401-02 (Nev. 2011)). Here, there is evidence that Mother is open to setting a schedule for Father to have phone calls with the children and also visit the children.

Father also maintains that he is entitled to a modification of the parenting plan because he allegedly completed the requirements set forth in Section J of the agreed plan, which stipulated that completion of certain requirements would constitute a material change of circumstances, thus warranting a modification. However, we are similarly unconvinced by this argument. As we pointed out earlier, Section J of the parties' parenting plan provided, in pertinent part,

> [t]he parties agree that Father shall undergo a psychological evaluation and an alcohol and drug assessment, and Father agrees to follow all of the recommendations of the respective professionals. Upon Father **providing proof of completion of the above requirements and compliance with all**

- 7 -

**recommendations thereof**, then this shall constitute a material change in circumstances warranting modification of this parenting plan.

(emphasis added). Father argues that he testified at the hearing that he had satisfied Section J's requirements as he received the required assessments at Bradford Health and Health Connect America and had completed all of the recommendations. However, contrary to the bolded language of the above provision, Father did not provide evidence of completion of the requirements or of compliance with its recommendations. Specifically, when questioned regarding the required proof at trial, Father admitted that he did not have a progress report or a discharge summary. In its order, the trial court cited this failure, noting that "Father did not present proof of a successful discharge from therapy as a result of 'no further issues,' and because this Court is not able to credit Father's testimony . . . the Court finds that there has been no material change in circumstances[.]"

Consequently, based upon our own review of the record and the parties' contentions set forth in their respective briefs, like the trial court, we cannot determine that there exists a material change of circumstances based merely upon Father's assertion that he completed the requirements set forth in Section J of the parenting plan. Despite Father's testimony that he had satisfied the requirements, the trial court found that "Father did not present proof of a successful discharge from therapy as a result of 'no further issues'" and, more significantly, it found that it was "not able to credit Father's testimony." Trial courts are typically better positioned to judge the credibility of witnesses and thus, such determinations are "entitled to great weight" before this Court. *Gaskill v. Gaskill*, 936 S.W.2d 626, 633 (Tenn. Ct. App. 1996) (citing *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn. 1959)). As such, we conclude that the evidence present in the record before us does not preponderate against the trial court's findings and we, therefore, affirm its order denying the petition to modify the parties' residential parenting schedule.

*Mother is Entitled to Her Attorney's Fees on Appeal*

Mother contends that she is entitled to her attorney's fees on appeal. Tennessee Code Annotated section 36-5-103(c) vests this Court with the discretionary authority to award fees and costs where we deem proper. *See Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004) (citing *Holt v. Holt*, 995 S.W.2d 68, 78 (Tenn. 1999)). We have previously stated:

> [W]hen this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Spigner v. Spigner*, No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *13 (Tenn. Ct. App. Dec. 8, 2014) (quoting *Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007)).

Here, Mother defended this appeal after Father sought a review of the trial court's order denying modification of the parties' parenting plan. Mother specifically requests attorney's fees based on her relative ability to pay as compared to Father and Father's purported bad faith in both agreeing to the parenting plan and later filing the motion to modify said plan.

Considering all the relevant factors and her success in defending this appeal, we conclude Mother is entitled to her attorney's fees incurred in this appeal.

## CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court and award Mother her attorney's fees incurred on appeal and remand this case to the trial court for a determination of the amount of attorney's fees to be awarded to Mother.

       s/ Arnold B. Goldin
       ARNOLD B. GOLDIN, JUDGE